IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| BUSINESS AIRCRAFT LEASING, INC., <br><br> Plaintiff, <br><br> v. <br><br> BRIAN CARN MINISTRIES, INC.; MIRACLE ARENA FOR ALL NATIONS; BRIAN CARN; MARTIN KOFI DANSO; RONALD E. MAYS; CITY JET, INC.; MICHAEL CARASTRO; and APOLLO FLIGHT TRAINING & AIRCRAFT MANAGEMENT, LLC d/b/a APOLLO AVIATION, <br><br> Defendants. | Civil Action No. _____ |

## COMPLAINT

Plaintiff, Business Aircraft Leasing, Inc. ("BALI"), respectfully states its Complaint against Defendants, Brian Carn Ministries, Inc. ("BCMI"), Miracle Arena for All Nations ("Miracle Arena"), Brian Carn ("Mr. Carn"), Martin Kofi Danso ("Mr. Danso"), Ronald E. Mays ("Mr. Mays"), City Jet, Inc. ("City Jet"), Michael Carastro ("Mr. Carastro") and Apollo Flight Training & Aircraft Management, LLC d/b/a Apollo Aviation ("Apollo") (collectively "Defendants"), as follows:

## PARTIES AND BACKGROUND

1. BALI is a Tennessee corporation with its principal place of business in Nashville, Davidson County, Tennessee. BALI's principal business entails the leasing, brokerage and/or sale of private aircraft.

2. BCMI is a Florida not-for-profit corporation with its principal place of business in Jacksonville, Florida. On information and belief, BCMI is owned and controlled by Mr. Carn.

1

3. On information and belief, Mr. Carn is domiciled in Florida. Mr. Carn is a popular minister and self-proclaimed "prophet" who, according to BCMI's website

> *has become an internationally recognized, prophetic voice. A preacher of Holiness and student of the Word, Brian Carn is renowned for his prophetic accuracy, humility and passion. God has equipped Prophet Carn to see and speak into the spirit realm– to confirm and to change. The miraculous and incessant testimonies attributed to his ministry are incalculable with many reporting physical and mental healing, financial breakthroughs, property acquisitions, home and auto acquisitions, debt cancellations and favorable legal outcomes.*[1]

4. Miracle Arena is a Canadian not-for-profit corporation, with its principal place of business in Toronto, Ontario, Canada. On information and belief, Miracle Arena is controlled primarily by Mr. Danso, who is the Senior Pastor of Miracle Arena.

5. On information and belief, Mr. Danso is domiciled in Canada. Like Mr. Carn, Mr. Danso is a popular minister who advertises his "unique prophetic gift, healing ministry and apostolic leadership."[2]

6. Both Mr. Carn and Mr. Danso tout their "prophetic gifts" and their ability to travel the world "impacting and empowering millions."[3] To further the prophets' worldwide mission, BCMI and Miracle Arena (together "Lessees") contracted with BALI to lease an aircraft, which is the subject matter of this Complaint. Mr. Carn and Mr. Danso (together "Guarantors") personally guaranteed the lease agreement between BALI and Lessees.

7. City Jet is an Alabama corporation with its principal place of business in Montgomery, Alabama. On information and belief, City Jet is controlled by Mr. Mays, an individual domiciled in Alabama.

8. Apollo is a Mississippi limited liability company with its principal place of business in Gulfport, Mississippi.

---

[1] *See* www.briancarn.com/about (last visited June 30, 2016).
[2] *See* www.miraclearena.ca/#!leadership/c5a5 (last visited June 30, 2016).
[3] *Id.*

9. On information and belief, Mr. Carastro is an individual domiciled in Mississippi who has acted individually and through Apollo during the time period at issue in this lawsuit.

10. On information and belief, Mr. Mays and City Jet are agents for Lessees and Guarantors. Specifically, it is believed that Mr. Mays and/or City Jet acted as the Aircraft Manager for Lessees and Guarantors.

11. On information and belief, Mr. Carastro and Apollo are agents for Lessees and Guarantors and/or Mr. Mays and City Jet.

12. Lessees and Guarantors have defaulted on the lease agreement and personal guaranties with BALI and BALI now seeks to recover for breach of contract and other related causes of action, including conversion and unjust enrichment arising from Defendants' unlawful holdover possession and use of the subject aircraft following termination of the lease agreement, and an action to recover personal property owned by BALI that is being unlawfully detained by one or more Defendants.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction of this case pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000 and is between citizens of different states.

14. This Court has personal jurisdiction over Defendants because the contracts at issue were to be performed at least in part in Tennessee and because the terms of the lease agreement at issue establish that personal jurisdiction is proper in Nashville, Tennessee. Furthermore, Defendants purposefully availed themselves of doing business with BALI, a Tennessee corporation, and knowingly and intentionally caused harm to BALI through their breach of contract and other wrongs as described below.

15.     Venue is proper in this Court because the lease agreement at issue provides that venue is proper in Nashville, Tennessee and the causes of action arose in Nashville, Tennessee.

## FACTUAL ALLEGATIONS

16.     On September 4, 2015, BCMI entered into an Aircraft Lease Agreement (the "Lease Agreement") to lease a British Aerospace HA-125-800A, serial number NA-0401 (258100), US Registration Number N180NE (the "Aircraft"), for a term beginning September 1, 2015 and ending August 31, 2018. Under the Lease Agreement, BALI was the named "Lessor" and BCMI was the named "Lessee." A true and correct copy of the Lease Agreement is attached hereto as **Exhibit A**.

17.     Section 28 of the Lease Agreement provides:

> 28.     Applicable Law and Jurisdiction. This Agreement shall be deemed to have been made and executed in Davidson County, Tennessee and shall be interpreted and the rights and liabilities of the parties hereto determined in accordance with the laws of the State of Tennessee. If Lessor is unable to serve Lessee at the address set forth in Section 21, or such other address as Lessee may provide to Lessor in writing, Lessee hereby designates the Secretary of State of the State of Tennessee as agent for the purpose of accepting service of process within the State of Tennessee. Should litigation arising out of or in any way related to the terms, conditions, and/or subject of this matter of this Agreement become necessary the parties further agree that the exclusive situs of such litigation will be Nashville, Davidson County, Tennessee. Furthermore, the venue shall be deemed to be proper only in Nashville, Davidson County, Tennessee, and the courts located there shall have exclusive in personam jurisdiction over said litigation.

18.     The Lease Agreement provides for certain payments to be made to BALI:

> 3.     Payments to Lessor.
>
> (A) Lessee shall pay Lessor prior to the commencement date stated in Section 2 above an initial rent payment in the amount of Ninety Five Thousand U.S. Dollars ($95,000.00) ("Initial Rent Payment"). Rent payments for subsequent months shall be Eighteen Thousand U.S. Dollars ($18,000.00) (the "Rent") without demand, offset, deduction or counterclaim on or before the first day of each month. Notwithstanding the foregoing, if the commencement date is not on the first day of the month, then the second month's Rent payment shall be prorated. The Rent payment entitles Lessee to no more than thirty (30) hours per month. For every hour flown over the twenty hours per month, but less than thirty hours per month, Lessee will reimburse Lessor an additional Five Hundred U.S. Dollars ($500.00) ("Excess Utilization

4

Charges"). Said Excess Utilization Charges are payable within ten (10) days after the end of each month.

    (B) In addition to the Rent, Lessee shall pay Lessor engine reserve hourly charges ("Engine Reserves") at the current hourly rate charged by Honeywell MSP engine maintenance for contract number 6273F [currently $638.00 per hour].  Lessee is subject to the escalation terms, annual minimum hourly requirements and all other terms and conditions of the MSP contract during the Lease Term.  Non-compliance with the terms of the Honeywell MSP engine maintenance program will be considered an Event of Default under this Lease. A copy of the Honeywell MSP contract will be provided to Lessee prior to the execution of this Lease Agreement.

    (C)  Any moneys owed to Lessor by Lessee, including, but not limited to Rent, Excess Utilization Charges and Engine Reserves not be [sic] received for any reason within ten (10) days after the date in which such moneys became due, Lessee shall pay to Lessor a late fee on such moneys at Five Hundred U.S. Dollars ($500.00) per day. Such late fee shall accrue from the date moneys were first due.

19. On or about February 16, 2016, in an effort to resolve some overdue rent payments, BALI and BCMI amended the Lease Agreement by executing the First Amendment to Aircraft Lease Agreement ("the First Amendment"). A true and correct copy of the First Amendment is attached hereto as **Exhibit B**.[4]

20. Paragraph 1 of the First Amendment provided as follows:

1. Lessee and Lessor agree to the following schedule to repay past due rent and October Engine Reserves:

 A. Lessee agrees to pay Lessor $40,000 on or before February 19, 2016;

 B. Lessee agrees to pay Lessor $30,000 on or before February 26, 2016;

 C. Lessee agrees to pay Lessor an additional $15,200 on March 1, 2016 when the March Rent payment is made.

*See* Exhibit B, First Amendment. No other terms pertaining to payments were modified.

21. On or around March 3, 2016, Mr. Danso executed a Personal Lease Guaranty (the "Danso Guaranty") whereby he requested BALI to enter into the Lease Agreement with Miracle Arena and unconditionally guaranteed to BALI that Miracle Arena would perform its obligations

---

[4] The indication on the First Amendment that it "is made as of February 16, 2015" is a typographical error. The First Amendment was executed on or around February 15, 2016, several months after the Lease Agreement was executed.

5

Case 3:16-cv-01577   Document 1   Filed 06/30/16   Page 5 of 20 PageID #: 5

under the Lease Agreement and First Amendment. He also initialed and signed the Lease Agreement. A true and correct copy of the Danso Guaranty, including the initialed and signed pages of the Lease Agreement, is attached hereto as **Exhibit C**.

22. On or around March 4, 2016, Mr. Carn executed a Personal Lease Guaranty (the "Carn Guaranty") whereby he unconditionally guaranteed to BALI that BCMI would perform its obligations under the Lease Agreement and the First Amendment. A true and correct copy of the Carn Guaranty is attached hereto as **Exhibit D**.

23. In executing the personal guaranties, Mr. Carn and Mr. Danso both pledged to

> jointly, severally and unconditionally guarantee[] to [BALI] that the lessee will fully and promptly pay, when due, every rental installment and all other sums payable under such lease and perform all of lessee's present and future obligations to [BALI] under this lease, as the same may be modified, amended or extended…and agrees, without [BALI] first having to proceed against the lessee or to liquidate the lease agreement or the leased property, to pay on demand the entire unpaid balance of the rentals and any other amounts due under said lease and to become due to [BALI] from the lessee and [sic] all losses, costs, attorneys' fees or expenses which may be suffered by [BALI] by reason of lessee's default or default of any of the undersigned…

*See* Exhibit C and Exhibit D (emphasis in originals). In other words, Mr. Carn and Mr. Danso as Guarantors are contractually bound with Lessees to perform under the Lease Agreement and First Amendment.

24. In addition to making payments as required by the Lease Agreement and the First Amendment, Lessees and Guarantors were obligated under the Lease Agreement to undertake all maintenance and repair work necessary to ensuring that the Aircraft remained in good operating condition and in compliance with applicable regulations. *See* Exhibit A, Lease Agreement, Section 9.

25. Lessees and Guarantors were also obligated to ensure that no liens or encumbrances attach to the Aircraft. *See* Exhibit A, Lease Agreement, Section 14.

6

26. Lessees and Guarantors defaulted on the foregoing obligations. In particular:

- Lessees and Guarantors have failed to make the following Rent payments: March 2016 ($18,000); April 2016 ($18,000); May 2016 ($18,000); June 2016 ($18,000).

- Lessees and Guarantors have failed to pay in full the arrearage payments set forth in the First Amendment. Specifically, Lessees and Guarantors have only paid $20,000 of the $30,000 payment due February 26, 2016.

- Lessees and Guarantors have failed to pay Engine Reserves in at least the amount of $72,191.70.

- Lessees and Guarantors have failed to pay Late Fees at the contractual rate of $500.00 per day from March 7, 2016 to present.

- Lessees and Guarantors have failed to ensure that no liens or encumbrances attach to the Aircraft. In particular, on information and belief, Lessees and Guarantors (or their agents, Mr. Mays and City Jet) have unpaid obligations owing to third party suppliers, including but not limited to Atlantic Aviation, Camp Systems, Signature Flight Support, Million Air, and the Federal Aviation Administration.

27. BALI gave notice of Lessees' and Guarantors' default by emails dated May 24, 2016 and May 31, 2016, true and correct copies of which are attached hereto as **Exhibit E**.

28. In addition to the defaults outlined above, Lessees and Guarantors also violated Section 5(E) of the Lease Agreement which prohibits "charter use" of the Aircraft.

29. Specifically, on information and belief, Lessees and Guarantors allowed Mr. Mays, City Jet, Mr. Carastro, and Apollo to use the Aircraft for unauthorized "bootleg charter" flights in violation of the Lease Agreement, in violation of BALI's rights in and to the Aircraft, and in violation of the licenses granted for the Aircraft by the Federal Aviation Administration, during which Mr. Mays, City Jet, Mr. Carastro, and Apollo charged third parties sums of money for travel on the Aircraft.

30. On information and belief, Lessees and Guarantors have acknowledged, and even endorsed, these "bootleg charters." As shown in the two online news articles attached hereto as **Exhibit F**, Mr. Danso is credited with having prophesied that God with bless him with a jet for

7

his birthday. According to the articles, Mr. Danso said the jet would be used to generate funds for the church when it was not in use by leasing it to third parties. *Id*.

31. Shortly after BALI learned of these "bootleg charters," which combined with all of the other defaults outlined above constituted clear grounds to terminate the Lease Agreement, BALI took steps to have the Aircraft secured at a fixed-base operator ("FBO") in Gulfport, Mississippi on or around June 5, 2016.

32. Before BALI could travel to Gulfport, Mississippi to retrieve the Aircraft, one or more individuals acting at the direction of Mr. Mays, City Jet, Mr. Carastro, Apollo, Lessees and/or Guarantors deceived the operators at the FBO, causing them to relinquish possession of the Aircraft to Mr. Mays, City Jet, Mr. Carastro, or Apollo, or someone acting on their behalves, on June 5, 2016. The Aircraft was then taken on an unauthorized trip to Austin, Texas in violation of the Lease Agreement and in contradiction to BALI's rights to solely possess the Aircraft.

33. Growing ever more concerned about the location and condition of the Aircraft, BALI (through its attorneys) gave notice of Lessees' and Guarantors' default in a Notice of Acceleration and Termination letter dated June 6, 2016, a true and correct copy of which is attached hereto as **Exhibit G**. In this notice, BALI stated it was declaring default pursuant to Section 18 of the Lease Agreement and demanded that Lessees and Guarantors cure the default immediately. Pursuant to Section 18 of the Lease Agreement, BALI's remedies include the right to

(A) Declare the entire amount of Rent hereunder immediately due and payable and accelerate the terms of this Lease and declare the full amount of Rent payments for the remaining Lease Term and Additional Term, if applicable, immediately due and payable and to sue for and receive all such payments and other amounts then due or thereafter accruing under this Lease, including reasonable attorneys fees; and

8

(B) Recover from Lessee an amount equal to the aggregate of all unpaid sums due or to become due during the lease term and any extension(s) if applicable; and

(C) Lessee shall immediately stop flying the Aircraft and return the Aircraft to Lessor at any point in the United States designated by Lessor; and

(D) Terminate this Lease and retain all prior payments of Rent; retake possession of the Aircraft as hereinabove provided for and retain all previously paid moneys as liquidated damages. In the event of Lessor's repossession of the Aircraft, Lessor shall not be liable to Lessee for any damages occasioned by such taking or repossession.

34. Because it believed Mr. Mays, City Jet, Mr. Carastro, and/or Apollo were illegally possessing and/or controlling the Aircraft, BALI also copied Mr. Mays, City Jet and Mr. Carastro on its Notice of Acceleration and Termination on June 6, 2016. *See* Exhibit G. Mr. Mays and Mr. Carastro were instructed "to cease use of the Aircraft and store it in a secure location pending its return to BALI." *Id*.

35. Mr. Mays confirmed receipt of the Notice of Acceleration and Termination by email to counsel for BALI on June 6, 2016 at 9:10 p.m. Eastern Time and advised that his attorney would be responding at a later time. However, neither Mr. Mays nor Mr. Carastro returned the Aircraft to BALI on June 6, 2016, nor did they make arrangements to do so at a later time. Instead, Mr. Mays, City Jet, Mr. Carastro and Apollo embarked on a series of undisclosed trips using the Aircraft, causing BALI further concern about the location and condition of its Aircraft.

36. On June 7, 2016, at 12:27 p.m. Eastern time, BALI wrote directly to Mr. Mays by email again the demanding return of the Aircraft.

37. BALI learned later in the day on June 7, 2016 that Mr. Mays had taken possession of the Aircraft in Prattville, Alabama, replaced it with his own flight crew, and, with the assistance of Mr. Carastro and Apollo, departed to an unknown destination. On information and

belief, Mr. Mays, City Jet, Mr. Carastro and Apollo were blocking access to their flight plans using a web-based service.

38. On June 7, 2016, at 5:12 p.m. Eastern Time, BALI again wrote to Mr. Mays admonishing Mr. Mays for taking the Aircraft on an unauthorized trip and again demanding that Mr. Mays, City Jet, Mr. Carastro and Apollo stop using the Aircraft and contact BALI to arrange for the Aircraft to be returned to BALI.

39. On June 7, 2016 at 6:03 p.m. Eastern Time, Mr. Mays refused to return the Aircraft to BALI, instead advising BALI: "I have taken it to the representative for a maintenance audit." At 6:04 p.m., Mr. Mays sent a follow up email simply stating "Atlanta."

40. BALI's counsel sent a demand to Mr. Mays again at 6:58 p.m. Eastern Time on June 7, 2016, instructing Mr. Mays that BALI had the exclusive right to exercise control over the Aircraft; that there was no operative lease giving any other person or entity the right to possess or use the Aircraft; and demanding that possession of the Aircraft be restored to BALI. Neither Mr. Mays nor Mr. Carastro returned the Aircraft to BALI on June 7, 2016, nor did they make arrangements to do so at a later time.

41. Through its own extensive investigation and contrary to what it was being told by Mr. Mays, City Jet, Mr. Carastro and Apollo, BALI learned that the Aircraft was scheduled to travel to Cleveland, Ohio on June 8, 2016.

42. Finally, BALI and its attorneys were able to successfully recover the Aircraft in Cleveland, Ohio but only after incurring significant time and expense to do so.

43. Mr. Mays, City Jet, Mr. Carastro and Apollo's unlawful operation of the Aircraft and evasive maneuvers to prevent BALI's recovery of the Aircraft resulted in significant time and expense to BALI. Specifically:

- Mr. Mays, City Jet, Mr. Carastro and Apollo (with the consent of Lessees and Guarantors) flew the Aircraft for 105 or more hours to multiple cities in violation of the Lease Agreement, causing additional (and uncompensated) wear and tear on the Aircraft, including but not limited to severe damage to new carpet; damage to the lavatory; and damage to the Aircraft controls;

- BALI was forced to incur significant time and expense tracking the location of the Aircraft due to the refusal of Mr. Mays, City Jet, Mr. Carastro, Apollo, or the Lessees or Guarantees, to confirm where the Aircraft was located;

- BALI was forced to incur significant attorneys' fees in preparing to file an emergency motion for injunctive relief to recover possession of the Aircraft;

- BALI was forced to incur significant time and expense to fly its President to Cleveland to recover the Aircraft; and

- Mr. Mays, City Jet, Mr. Carastro and/or Apollo are in possession of and refuse to return certain personal property of BALI that should have remained with the Aircraft, including an FMS database loader, log books, covers, keys, etc. (as described more fully below).

44. Although BALI has regained possession of the Aircraft, Lessees and Guarantors have not cured their defaults under the Lease Agreement and First Amendment. Pursuant to Section 18(A), all future Rent obligations and other sums owed under the Lease Agreement and First Amendment have now been accelerated and are due without further demand.

45. As of the date of this filing, Lessees and Guarantors are obligated to BALI for contractual damages in an amount to be determined, but not less than **$716,191.70** (excluding attorneys' fees and expenses recoverable under the Lease Agreement) consisting of the following:

- $154,191.70 for unpaid Rent and Engine Reserves;

- $58,000 for Late Fees pursuant to Section 3(C) of the Lease Agreement (calculated at $500 per day from March 7, 2016 to present); and

- $504,000.00, consisting of the future Rent due for the twenty-eight months of remaining Term under the Lease Agreement.

46. Lessees and Guarantors are also liable for damages arising from the unauthorized bootleg charter flights operated by Mr. Mays, City Jet, Mr. Carastro and Apollo including but not limited to damages for wear and tear on the Aircraft, increased maintenance expenses, costs incurred to recover the Aircraft and potential exposure to claims from third parties.

47. Lessees, Guarantors, Mr. Mays, City Jet, Mr. Carastro and Apollo are liable under a theory of unjust enrichment for any and all benefits they earned through the unauthorized use of BALI's Aircraft to operate bootleg charters.

48. Lessees, Guarantors, Mr. Mays, City Jet, Mr. Carastro and Apollo are liable under a theory of conversion for actual and punitive damages arising from the bootleg charter operation of Mr. Mays, City Jet, Mr. Carastro and Apollo.

49. Finally, Mr. Mays, City Jet, Mr. Carastro and Apollo are liable for the ongoing wrongful possession of BALI's personal property that should have remained with the Aircraft, including an FMS database loader, log books, covers, keys, and other property as described herein.

**COUNT ONE – BREACH OF LEASE AGREEMENT AND FIRST AMENDMENT BY BCMI AND MIRACLE ARENA**

50. BALI incorporates herein by reference all of the above paragraphs as if fully set forth below.

51. The Lease Agreement and First Amendment are valid and enforceable in accordance with their terms.

52. BALI has fully performed all of its obligations under the Lease Agreement and First Amendment.

53. Lessees agreed to pay all amounts due under the Lease Agreement, including Rent and Engine Reserves, arrearages due under the First Amendment, and Late Fees. Lessees

12

agreed to keep the Aircraft operational, duly certified and airworthy at its own expense and agreed to ensure that no liens or other encumbrances attached to the Aircraft. Lessees agreed to return the Aircraft following termination of the Lease Agreement at the Lessee's expense. Lessees failed to perform these obligations despite repeated demands.

54. As a direct and proximate result of Lessees' failure to pay BALI as required under the Lease Agreement and First Amendment and failure to otherwise perform their obligations under the Lease Agreement, BALI has suffered damages in an amount not less than **$716,191.70.**

55. Pursuant to the terms of the Lease Agreement and First Amendment, BALI is entitled to recover, without limitation, its damages, plus attorneys' fees, expenses, and courts costs from Lessees. *See* Exhibit A, Lease Agreement, Section 18 (Remedies) and Section 21 (Attorneys Fees).

56. Lessees are also in violation of Section 5(E) of the Lease Agreement, which prohibits use of the Aircraft for "charter use".

57. By permitting the Aircraft to be flown for bootleg charter flights by Mr. Mays, City Jet, Mr. Carastro and Apollo, Lessees breached Section 5(E) of the Lease Agreement.

58. BALI has sustained damages from the bootleg charter flights, without limitation, in the form of increased, unauthorized wear and tear on the Aircraft and increased maintenance expenses, loss of personal property, significant costs to recover the Aircraft, and potential exposure to claims by third parties.

59. In addition to recovering Rent, Engine Reserves, Late Fees, and other contractual damages outlined above, BALI is entitled to recover from Lessees damages related to the unauthorized bootleg charter flights. *See* Exhibit A, Lease Agreement, Section 18 (Remedies).

WHEREFORE, BALI prays for judgment in its favor and against Lessees for breach of the Lease Agreement and First Amendment in an amount to be proven at trial but not less than

**$716,191.70**, plus damages for the unauthorized bootleg charter flights in an amount to be determined, plus attorneys' fees, interest, expenses and court costs.

### COUNT TWO – BREACH OF PERSONAL LEASE GUARANTY BY BRIAN CARN AND MARTIN KOFI DANSO

60. BALI incorporates herein by reference all of the above paragraphs as if fully set forth below.

61. The Carn Guaranty and the Danso Guaranty are valid and enforceable in accordance with their terms.

62. BALI has fully performed all of its obligations under the Lease Agreement and First Amendment. As noted above, Lessees failed to perform their obligations under the Lease Agreement and First Amendment despite repeated demands.

63. Guarantors personally guaranteed that Lessees would pay all amounts due under the Lease Agreement and First Amendment and would otherwise perform all obligations under the contracts, or Guarantors would "pay on demand the entire unpaid balance of the rentals and any other amounts due under said lease…" *See* Exhibit C and Exhibit D.

64. Guarantors have refused to perform their obligations under the Carn Guaranty and the Danso Guaranty.

65. As a direct and proximate result of Guarantors' failure to pay BALI as required under the Lease Agreement, First Amendment, Carn Guaranty and Danso Guaranty, BALI has suffered contractual damages in an amount not less than **$716,191.70.**

66. BALI has also suffered damages related to the unauthorized bootleg charter flights operated by Mr. Mays, City Jet, Mr. Carastro and Apollo, who are agents of Lessees, in violation of the Lease Agreement.

67. Pursuant to the terms of the Lease Agreement, First Amendment, Carn Guaranty and Danso Guaranty, BALI is entitled to recover, without limitation, its damages, plus attorneys fees, expenses, and courts costs from Guarantors. *See* <u>Exhibit A</u>, Lease Agreement, Section 18 (Remedies) and Section 21 (Attorneys Fees).

WHEREFORE, BALI prays for judgment in its favor and against Guarantors for breach of the Lease Agreement, the First Amendment, the Carn Guaranty, and the Danso Guaranty in an amount to be proven at trial but not less than **$716,191.70**, plus damages for the unauthorized bootleg charter flights in an amount to be determined, plus attorneys' fees, interest, expenses and court costs.

### COUNT THREE – UNJUST ENRICHMENT AGAINST ALL DEFENDANTS

68. BALI incorporates herein by reference all of the above paragraphs as if fully set forth below.

69. Mr. Mays, City Jet, Mr. Carastro and Apollo, with the consent of Lessees and Guarantors, engaged in unauthorized bootleg charter flights totaling at least 105 hours of flight time using BALI's Aircraft and received money ("Charter Fees") paid by third parties to fly on BALI's Aircraft.

70. The bootleg charter flights were not authorized and, in fact, were in direct contravention of the Lease Agreement between BALI and Lessees and Guarantors and in violation of licenses granted for the Aircraft by the Federal Aviation Administration.

71. The operation of the bootleg charter flights resulted in a benefit being conferred by BALI upon Defendants.

72. Mr. Mays, City Jet, Mr. Carastro and Apollo, with the consent of Lessees and Guarantors, received Charter Fees in exchange for the bootleg charter flights, and thereby all Defendants received an appreciation of the benefit conferred by BALI.

73. Because Defendants had no right to utilize the Aircraft for the bootleg charter flights, and such flights violated the Lease Agreement between BALI and Lessees/Guarantors and are inconsistent with BALI's rights as owner of the Aircraft, it would be inequitable and unjust to allow Defendants to retain the benefit of the Charter Fees without payment of the value thereof to BALI.

74. BALI is entitled to recover from Defendants any and all Charter Fees received by them in connection with the unauthorized bootleg charter flights.

WHEREFORE, BALI prays for judgment in its favor and against Lessees, Guarantors, Mr. Mays, City Jet, Mr. Carastro and Apollo, for all amounts received by them in connection with the unauthorized bootleg charter flights in an amount to be determined, plus attorneys' fees, interest, expenses and court costs.

### COUNT FOUR – CONVERSION AGAINST ALL DEFENDANTS

75. BALI incorporates herein by reference all of the above paragraphs as if fully set forth below.

76. Upon termination of the Lease Agreement, BALI was entitled to immediate possession of the Aircraft. BALI terminated the Lease Agreement on June 6, 2016 and demanded the immediate return of the Aircraft.

77. Defendants continued to exert dominion, control and rights of ownership to the Aircraft after termination. Specifically, Defendants made numerous unauthorized flights around the country before and after the Lease Agreement was terminated. Defendants concealed the

location of BALI's Aircraft using Internet-based technology and repeatedly gave misinformation to BALI about the location of its Aircraft. BALI was forced to incur significant time and expense locating and recovering the Aircraft, all without Defendants' cooperation. This caused damage to BALI in the form of the lost value of its Aircraft, wear and tear, increased maintenance expenses, including Honeywell MSP charges at $638.00 per hour, significant costs of recovery of the Aircraft, loss of personal property including an FMS database data loader, log books, covers, keys, and similar property and exposure to potential liability from third parties. Moreover, Defendants' behavior in light of BALI's unequivocal demand that the Aircraft be grounded and returned to it was intentional, malicious, reckless, and in willful disregard of BALI's right to possession of its Aircraft.

78. Lessees and Guarantors knew or should have known that their agents, Mr. Mays, City Jet, Mr. Carastro and Apollo, were engaged in the bootleg charter operation in contravention of the Lease Agreement and in violation of BALI's rights

79. Consequently, BALI is entitled to judgment in an amount to be determined at trial for actual damages for conversion, as well as an award of punitive damages for the Defendants' intentional, malicious, reckless behavior in disregard of BALI's rights.

## COUNT FIVE – CLAIM TO RECOVER PERSONAL PROPERTY

80. BALI incorporates herein by reference all of the above paragraphs as if fully set forth below.

81. Mr. Mays, City Jet, Mr. Carastro and/or Apollo are in possession of personal property belonging to BALI and which BALI alone is entitled to possess.

82. Such personal property includes, but is not necessarily limited to

- 1 each Flight Display Keyboard
- 1 each Collins RDP-300 Remote Programmer

- 3 each alcohol dispensers
- 1 each Aircraft Flight Manual
- 1 each Portable Universal Data Base Loader
- 1 each Crew Manual vol 1 & 2
- 1 each PBE
- 1 each UNS Operators Checklist
- 1 each Maintenance Rug Runner
- 1 each Fire Axe
- 1 each Cockpit Fire Extinguisher
- 1 each RVSM Manual (copy)
- 1 each Airframe Logbook 4/2010 to current (copy)
- 1 each Airframe Logbook 9/1998 to 4/2010 (copy)
- 1 each LH Engine Logbook 9/2010 to current (copy)
- 1 each RH Engine Logbook 9/2010 to current (copy)
- 1 each Airframe Logbook 4/2010 to current (copy)
- 1 each APU Book July 1999 to Current (copy)
- 1 each Mod Books (copy)
- 1 each Weight & Balance Book (copy)
- 1 each Aircraft Flight Log
- 1 each set of Engine Cover
- 1 each Door Open Cable
- 1 each Stall Vent Plug P/N 25Y1185A
- 2 each Set of T/R Pin Plates Assy #54750201-1

83. The above described personal property was previously kept in the Aircraft that is the subject of this action. As shown fully herein, BALI is the sole party entitled to possess the Aircraft and this associated personal property.

84. BALI has made multiple demands on Mr. Mays, City Jet, Mr. Carastro and/or Apollo for return of its personal property. However, these Defendants refuse to return the property.

85. Consequently, BALI is entitled to an order requiring Mr. Mays, City Jet, Mr. Carastro and/or Apollo to return its property and to pay any damages arising from their ongoing possession of the property as provided by applicable law.

WHEREFORE, BALI prays for judgment in its favor and against Mr. Mays, City Jet, Mr. Carastro and/or Apollo requiring return of its personal property and for any damages arising from the ongoing wrongful possession of the property, plus attorneys' fees, expenses and court costs.

## PRAYER FOR RELIEF

For the forgoing reasons, BALI prays for judgment in its favor and against BCMI, Miracle Arena, Brian Carn, Martin Kofi Danso, Ronald Mays, City Jet, Michael Carastro and Apollo Flight Training & Aircraft Management, LLC Inc. as demanded herein, including a judgment for an amount to be proven at trial, but not any amount less than **$716,191.70**, to include actual damages and punitive damages as demanded herein, interest, attorneys' fees (as provided by the Lease Agreement), expenses and court costs.

This the 30th day of June 2016.

        Respectfully submitted,

        s/ Brian H. Meldrum
        Brian H. Meldrum (*pro hac vice* forthcoming)
        STITES & HARBISON PLLC
        400 West Market Street
        Suite 1800
        Louisville, KY 40202-3352
        Telephone: (502) 587-3400
        Email: bmeldrum@stites.com

        -and-

        s/ Lauren Paxton Roberts
        Lauren Paxton Roberts (BPR No. 25049)
        STITES & HARBISON PLLC
        401 Commerce Street
        Suite 800
        Nashville, TN 37219
        Telephone: (615) 782-2200
        Email: lauren.roberts@stites.com

        *Counsel for Plaintiff Business Aircraft Leasing, Inc.*

1074103:2:LOUISVILLE