IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| BUSINESS AIRCRAFT LEASING, INC., | ) ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| BRIAN CARN MINISTRIES, INC.; | ) | CIVIL ACTION NO. |
| MIRACLE ARENA FOR ALL NATIONS; | ) | 3:16-cv-01577 |
| BRIAN CARN; MARTIN KOFI DANSO; | ) | |
| RONALD E. MAYS; CITY JET, INC. | ) | |
| MICHAEL CARASTRO; and | ) | |
| APOLLO FLIGHT TRAINING & | ) | |
| AIRCRAFT MANAGEMENT, LLC | ) | |
| d/b/a APOLLO AVIATION, | ) | |
| | ) | |
| Defendants. | ) | |

## MARTIN KOFI DANSO'S AND MIRACLE ARENA FOR ALL NATIONS' MOTION TO DISMISS AMENDED COMPAINT FOR LACK OF PERSONAL JURISDICTION

Martin Kofi Danso ("Danso") and Miracle Arena For All Nations ("Miracle Arena"), by and through the undersigned counsel of record, and by way of special appearance, hereby file this Motion to Dismiss Amended Complaint for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

For the reasons set forth in their Memorandum in Support, pursuant to Fed. R. Civ. P. 12(b)(2), Defendants Danso and Miracle Arena show this Court that the exercise of personal jurisdiction over them in this case is not supported by the allegations of Plaintiff's Complaint and would violate the Fourteenth Amendment

of the Constitution of the United States.  Accordingly, these Defendants request

that Plaintiff's Complaint be dismissed for lack of personal jurisdiction.

Respectfully submitted this 8th day of September, 2016.

/s/*Raanon Gal*
Raanon Gal
Tennessee Bar No. 023634
**TAYLOR ENGLISH DUMA LLP**
1600 Parkwood Circle, Suite 400
Atlanta, GA 30339
(770) 434-7214 (tel)
(770) 434-7376 (fax)
rgal@taylorenglish.com

Attorney for Defendants Martin Kofi Danso
and Miracle Arena for All Nations

2

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

BUSINESS AIRCRAFT LEASING, )
INC., )
        Plaintiff, )
v. )
         )
BRIAN CARN MINISTRIES, INC.; )    CIVIL ACTION NO.
MIRACLE ARENA FOR ALL NATIONS; )   3:16-cv-01577
BRIAN CARN; MARTIN KOFI DANSO; )
RONALD E. MAYS; CITY JET, INC. )
MICHAEL CARASTRO; and )
APOLLO FLIGHT TRAINING & )
AIRCRAFT MANAGEMENT, LLC )
d/b/a APOLLO AVIATION, )
         )
        Defendants. )

## MEMORANDUM OF DEFENDANTS DANSO AND MIRACLE ARENA IN SUPPORT MOTION TO DISMISS AMENDED COMPLAINT

Martin Kofi Danso ("Mr. Danso") and Miracle Arena For All Nations

("Miracle Arena"), by and through the undersigned counsel of record, hereby file

this Supplemental Memorandum in Support of their Motion to Dismiss Amended

Complaint, and show this Court as follows.

## INTRODUCTION

Plaintiff falsely alleged in the Original Complaint that Defendants Danso and

Miracle Arena were subject to personal jurisdiction on the grounds that, among other

things, Miracle Arena was a party under a lease agreement containing a consent to

personal jurisdiction, and Mr. Danso guarantied this lease agreement. Plaintiff has now withdrawn its cornerstone jurisdictional argument that Miracle Arena was a co-lessee and subject to personal jurisdiction based on the consent to jurisdiction in the lease without explanation. Instead, as to Miracle Arena, it now attempts to shift its jurisdictional claim to alleged contacts with the forum state– all of which are insufficient as a matter of law – and many of which are also demonstrably false and were either known to Plaintiff to be false or would be discovered to be false through any reasonable investigation.

When Plaintiff filed this action it also knew, or should have known, that Danso never signed a guaranty of the subject Lease. Plaintiff's Amended Complaint continues to allege, falsely, that Danso and Miracle Arena submitted to this Court's jurisdiction when they signed the guaranty. Plaintiff's Amended Complaint also alleges that these Defendants submitted to this Court's jurisdiction when they executed a proposed lease agreement (which was never accepted), made payments to Plaintiff (only one of which is identified), communicated with the Plaintiff by telephone (only one such conversation is identified), and "converted" the subject aircraft and personal property in some undisclosed manner and location. These activities are insufficient as a matter of law under the U.S. Supreme Court's landmark decisions of *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915,131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011) *Walden v. Fiore*, 134 S. Ct.

1115; 1118, 188 L. Ed. 2d 12; 2014 U.S. LEXIS 1635 (2014); and *Daimler AG v. Bauman*, 134 S. Ct. 746, 754, 187 L. Ed. 2d 624; 2014 U.S. LEXIS 644 (2014).

## FACTS

Martin Kofi Danso resides in Ontario, Canada and is a citizen of Canada. *See* Declaration of Martin Kofi Danso, ¶ 1 ("Danso Declaration"), previously filed in connection with his first Motion to Dismiss on August 8, 2016.  Mr. Danso has never been in the United States of America. *Id.* at ¶ 2.  He has applied for a visa waiver for entry into the United States of America, but that visa waiver has not been granted as of this time.  *Id.* Accordingly, Mr. Danso has no lawful right to enter into the United States. Mr. Danso does not own any property located in the State of Tennessee.  *Id.*  at ¶ 3.  Mr. Danso has never availed himself of the privileges and benefits of the laws of the State of Tennessee.  *Id.*

Miracle Arena is a Canadian non-profit corporation, which Plaintiff alleges is "controlled by Mr. Danso." (Complaint, ¶ 4).  Miracle Arena does not own or lease any property in the State of Tennessee, does not regularly transact or solicit business in Tennessee, and does not have any regular, continuous or systematic contacts with the State of Tennessee.  (Second Amended Danso Declaration, ¶¶ 2-5).

Plaintiff's original Complaint falsely alleged that "Miracle Arena . . . contracted with [Plaintiff] to lease an aircraft [later specifically described as the

3

September 4, 2015 "Aircraft Lease Agreement (*"the Lease Agreement"*)] . . . attached [to the Complaint] as Exhibit A"] (Complaint, ¶¶ 6 and 16). Plaintiff also falsely alleged that Mr. Danso "executed a Personal Lease Guaranty (the <u>Danso Guaranty</u>) whereby he requested [Plaintiff] to enter into *the Lease Agreement[1]* with Miracle Arena and unconditionally guaranteed to [Plaintiff] that Miracle Arena would perform its obligations under *the Lease Agreement and First Amendment [dated February 16, 2016]*." (Complaint ¶ 21). Additionally, Plaintiff falsely claimed that "[a] true and correct copy of the Danso Guaranty, including the initialed and signed pages of *the Lease Agreement*, was attached [to the original Complaint] as **<u>Exhibit C</u>**" (Complaint ¶ 21 and Exhibit C thereto) (bold and italicized emphasis added).

Contrary to the allegations made in the original Complaint, *the Lease Agreement* did not identify Miracle Arena as a party and did not bear what

---

[1] The absurdity of this allegation that Mr. Danso requested Plaintiff to enter into the September 24, 2015 Lease Agreement is further highlighted by the fact that the Lease Agreement had already been entered approximately six (6) months before, and this allegation falsely claims, in essence, that the purported March 3, 2016 guaranty induced Plaintiff to enter into an agreement it already had entered approximately six (6) months before. Plaintiff had already leased the Aircraft under the Lease Agreement that is the subject of this action, and the Danso Guaranty, even if genuine, had not been requested for that Lease as alleged. Aside from the absurdity of the allegation, it also highlights the total lack of any consideration for this purported guaranty of the pre-existing Lease by Mr. Danso – who was not a party to the Lease or even related to the Lessee under the September 24, 2015 Lease, Brian Carn Ministries, Inc.

4

purports to be Mr. Danso's signature. (*See* A to the Complaint). Additionally, in his declaration offered in support of his first Motion to Dismiss, Mr. Danso affirmatively testified that he never signed ***the Lease Agreement*** and was not himself a party to that lease. (*See* Danso Declaration ¶ 4). Likewise, Mr. Danso has affirmatively attested that the printed handwritten name on the signature line of the "Danso Guaranty" (Exhibit C to the Complaint) was not his handwriting and was not his signature. *See* Danso Declaration ¶ 5. For the sake of clarity and in response to the allegations of the Amended Complaint, Danso has filed herewith his Amended Declaration, averring that he never authorized Defendant Mays or anyone else to sign his name to the Guaranty. (*See* Amended Declaration of Martin Kofi Danso "Amended Danso Declaration," ¶ 6).

Prior to its amendment, Paragraph 21 of the Complaint falsely alleged that Mr. Danso "also initialed and signed ***the Lease Agreement***," and further that "the Danso Guaranty, include[es] the[se] initialed and signed pages [page one and the signature page] of ***the Lease Agreement***." Plaintiff, knowing that Danso never signed this Lease Agreement, attached these documents as Exhibit C to the Complaint and represented to this Court that they were ***from the Lease Agreement***. *Id.* However, ***these pages <u>were not from the Lease Agreement at all</u>***.

Instead, these excerpted pages were from a ***<u>proposed</u>*** Lease signed by Mr. Danso on behalf of Miracle Arena in January 2016 [sic] (the "Proposed January

5

2016 Miracle Arena Lease"), as the date on first excerpted page included in Exhibit C to the Complaint clearly shows.[2] The Lease Agreement, on the other hand, is clearly between Plaintiff and Brian Carn Ministries, not Danso or Miracle Arena. Yet, Plaintiff misrepresented to this Court that these pages were from the Lease Agreement.

Furthermore, as the excerpted signature page from the Proposed January 2016 Miracle Arena Lease shows, this proposed lease was never signed on behalf of Plaintiff. Even the slightest inspection of the first excerpted page of the Proposed January 2016 Miracle Arena Lease shows that Plaintiff's allegations in Paragraph 21 are clearly false, because the wording and the terms on page one of the proposed lease are materially different from the Lease Agreement. There is a significantly larger deposit in the Proposed January 2016 Miracle Arena Lease ($150,000 v. $95,000), a much lower monthly rental rate ($5,000 per month v. $18,000 per month) and a right to purchase the aircraft at the end of the term of the proposed lease – a term that is not present at all in the Lease Agreement.

Even more troubling than all of the foregoing, however, is the fact that on March 7, 2016, just **four days after Plaintiff alleges that Danso had** signed his

---

[2] This proposed lease agreement contains a typographical error listing the year as 2015 rather than 2016. However, the more significant point, as set forth below, is that these are two entirely different lease agreements with materially different terms.

6

Guaranty of the Lease Agreement **and provided Plaintiff with the copy of the initialed and signature pages of *the Lease Agreement* attached to the Guaranty**, Jackie Henson, on behalf of Plaintiff, sent an e-mail to Defendant Ron Mays, asking him to have Miracle Arena sign a Second Amendment to ***the Lease Agreement*** "***tying The Miracle Arena*** with Carn Ministries ***as a Lessee for the Hawker***." (*See* e-mail from Jackie Henson to "city123 [Ron Mays]" dated March 7, 2016 (emphasis added), attached hereto as Exhibit A and *compare* with Paragraph 21 of Plaintiff's Complaint). The subsequent proposed Second Amendment to ***the Lease Agreement*** "tying the Miracle Arena . . . as a Lessee for the Hawker" was never signed and for that reason Plaintiff obviously did not attach it or reference it in the Complaint.

Moreover, in pre-suit e-mail correspondence sent less than one month before the Complaint was filed, Plaintiff again admitted, by implication, that only Carn and Brian Carn Ministries had executed the Lease Agreement. (*See* e-mail correspondence from Jackie Henson to Brian Carn dated May 31, 2016, and attached hereto as Exhibit B, noting only that "Dr. Carn signed a lease with us," and referring only to a [purported] guaranty from "Mr. Danso, Miracle Arena" of the Lease). Clearly, Plaintiff ***knew*** before it filed the Complaint that Miracle Arena and Danso had never signed any documents making them parties to the subject Lease Agreement, and, in fact, had not signed the documents that Plaintiff

7

had prepared in order to add Miracle Arena as a Lessee. Yet, Plaintiff attempted to deceive this Court by presenting Exhibit C and making the patently false allegations in paragraph 21 of its Complaint that Danso signed and initialed the Lease Agreement and signed the Guaranty.

Plaintiff's original Complaint also alleged jurisdiction principally upon the Lease Agreement and Danso Guaranty, neither of which were executed by Mr. Danso, under the notion that Danso consented to the exercise of jurisdiction in Tennessee. Plaintiff's also Complaint also alleged personal jurisdiction on other grounds, stating that "Defendants [including Mr. Danso and Miracle Arena] purposefully availed themselves of doing business with BALI, a Tennessee corporation, knowingly and intentionally causing harm to BALI through the breach of Contract and other wrongs below." (Complaint, ¶ 14). In reality, no such purposeful availment of the forum state ever occurred, and there was no basis for the exercise of personal jurisdiction over Mr. Danso or Miracle Arena.

Accordingly, Defendants demanded that Plaintiff dismiss this action as to Danso and Miracle Arena Miracle Arena. Plaintiff declined to dismiss the Complaint as to Danso and Miracle Arena, and instead filed the Amended Complaint. Contradicting the specific allegations of the original Complaint, the Amended Complaint alleges that Danso and Miracle Arena were ***not*** co-lessees, and that consequently, any use of the aircraft by these Defendants amounts to a

8

conversion. (*See* Count Four of the Amended Complaint; *also compare* the original Complaint, at ¶¶ 6, 21, alleging that Miracle Arena and Danso were co-lessees, with the allegations of paragraphs 6, 28, 30 and 85 of the Amended Complaint, alleging that Miracle Arena and Danso were ***not*** co-lessees). Confusingly, Paragraph 14 of the Amended Complaint, which is directed to "all Defendants," continues to assert that the choice of venue provision in the Lease Agreement justifies the exercise of jurisdiction over "all Defendants," which would include Danso and Miracle Arena. (Amended Complaint, ¶ 14).

The most troubling aspect of the Amended Complaint, however, is the fact that Plaintiff continues to pursue a claim against Danso and Miracle under the Guaranty, when clearly the Guaranty was not signed by Danso on his own behalf or on behalf of Miracle Arena. (*See* Exhibit C to the Amended Complaint)(Dkt. 22-1, pp. 19-20). Moreover, the Guaranty on its face is incomplete. The last sentence on Page 1 is an incomplete sentence ending with the word "or," and page 2 begins with a new sentence, beginning with the word "If." *Id.* Clearly, at least one page is missing from the Guaranty. The Guaranty is undated and refers in the body of the document to the Lease Agreement of September 4, 2015, yet attaches the Proposed January 2016 Miracle Arena Lease Agreement, which was never accepted. The Guaranty identifies the "Lessee" as Miracle Arena, not Brian Carn Ministries, even though there was no lease agreement between Miracle Arena and Plaintiff.

9

Finally, the Guaranty does not properly name or identify the Guarantor. Rather, the Guarantor is inconsistently and incomprehensibly identified as "Kofi Danso/Miracle Arena, ___Individually___." *Id*. (Emphasis added). This document is patently suspicious and does not satisfy even the most basic requirements of contract formation for a guaranty under Tennessee law, as it fails to identify the guarantor and incorrectly identifies the alleged obligor - identifying Miracle Arena and not Brian Carn Ministries, LLC – as the lessee whose purported obligations under the Lease were the subject of the guaranty.

Other jurisdictional allegations include initialing and signing the Proposed January 2016 Miracle Arena Lease Agreement (Complaint, ¶ 15(ii)), sending a check for $15,000 to BALI (Complaint, ¶ 15(iii)), telephone conversations with BALI (Complaint, ¶ 15(iv)), and "damages stemming from their conversion of the Aircraft to be felt most particularly in Tennessee, where BALI was and is located." (Complaint, ¶ 15(v)). As set forth below, the alleged contacts set forth in these jurisdictional allegations, particularly as applied to a foreign corporation and a foreign individual who has never entered the United States and has no lawful right to do so, are inadequate to establish personal jurisdiction under the approach set forth in the triumvirate of new Supreme Court cases: *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011)) *Walden v. Fiore*, 134 S. Ct. 1115; 1118, 188 L. Ed. 2d 12; 2014 U.S.

10

LEXIS 1635 (2014); and *Daimler AG v. Bauman*, 134 S. Ct. 746, 754, 187 L. Ed. 2d 624; 2014 U.S. LEXIS 644 (2014).

## ARGUMENT AND CITATION OF AUTHORITY

**I.** **The Lease Agreement and the Purported Danso Guaranty Provide No Basis For the Assertion of Any Claims or the Exercise of Personal Jurisdiction Over Mr. Danso or Miracle Arena, Because Neither Is A Party to the Lease Agreement or To Any Guaranty of the Lease Agreement.**

The Complaint alleges that Mr. Danso was a guarantor under the Lease Agreement. However, under Tennessee law,[3] the Statute of Frauds requires that a guaranty must be signed to be enforceable. Tenn. Code Ann. Section 29-2-101(a)(2). Mr. Danso did not sign the Guaranty and did not print his name on the Guaranty. (*See* Danso Declaration, ¶ 5; Amended Danso Declaration, ¶ 6). Under these circumstances, there is no guaranty of the Lease Agreement by Mr. Danso.

---

[3] The Guaranty specifies Tennessee law; however, in this diversity case, the underlying validity of the document would ordinarily be governed by the law of the forum state, Tennessee. However, federal law contains a choice of law statute for aircraft leases and dictates that the applicable law is the State where the lease (not the aircraft) would be delivered, and "[i]f the conveyance, lease, or instrument specifies the place at which delivery is intended, it is presumed that the conveyance, lease, or instrument was delivered at the specified place." 49 US Code § 44108(c)(1). Since the Lease and Guaranty were never signed, their terms cannot dictate the result and the federal statute dictates that the validity of the Lease should be determined by the law of the state where the instrument was to be delivered. In this case, while noting the foregoing legal issue and that the evidence as to which party was to deliver the final document and where is not yet clear, it will be assumed for purposes of this motion only that the document was to be e-mailed to Plaintiff in Tennessee.

11

Further, even if the Guaranty attached to the Complaint as Exhibit C had been signed by Mr. Danso and otherwise genuine[4] and enforceable (which Mr. Danso denies), the Guaranty only specifies the application of Tennessee law, but, unlike the Lease Agreement, does not contain any consent to personal jurisdiction in the State of Tennessee.  (*See* Amended Complaint, Exhibit C.).  Rather, the Guaranty contains only a choice of law provision, which in and of itself is insufficient to confer jurisdiction.  *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 822 (8th Cir. 2014) ("choice-of-law provisions specifying that the forum state's laws govern are insufficient on their own to confer personal jurisdiction").

## II.   The Alleged "Contacts" Between Miracle Arena and Danso And The State of Tennessee Are Insufficient As A Matter of Law To Support The Exercise of Personal Jurisdiction.

The other alleged contacts are also insufficient as a matter of law to establish personal jurisdiction, because they were too attenuated and/or not related to the causes of action alleged, and as such they do not satisfy the due process

---

[4] As set forth in note 1, *supra*, there are significant clear, obvious and patent inconsistencies between the first page of the guaranty attached as Exhibit C to the Complaint, which refers to the Lease Agreement – to which neither Mr. Danso nor Miracle Arena for All Nations is a party – and the front page and signature page of the partially executed Proposed January 2016 Miracle Arena Lease attached to the Guaranty as included in Exhibit C to the Amended Complaint. These obvious inconsistencies on the face of Exhibit C, while clearly demonstrating that the Guaranty included in Exhibit C is not a Guaranty of the Lease Agreement as it purports on its first page to be, also raise questions as to the integrity, completeness and genuineness of the Complaint's Exhibit C as a whole.

12

requirement of minimum contacts. In diversity cases, federal courts apply the law of the forum state, subject to constitutional limitations, to determine whether personal jurisdiction exists. *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994). Thus, a court must look not only to the forum state's long-arm statute, but also to the due process requirements of the Constitution. Tennessee's long-arm statute, Tenn. Code Ann. § 20-2-214, expands the jurisdiction of Tennessee courts to the full limit permitted by due process. *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 645 (Tenn. 2009). When a state's long-arm statute reaches as far as the limits of the Due Process Clause, the two inquiries merge, and the Court need only determine whether the exercise of personal jurisdiction violates constitutional due process.

Depending on the type of minimum contacts in a case, personal jurisdiction can take one of two forms: (1) general personal jurisdiction, where the suit does not arise from defendant's contacts with the forum state; and (2) specific jurisdiction, where the suit does arise from the defendant's contacts with the forum state." *Daimler AG v. Bauman,* 134 S. Ct. 746, 754, 187 L. Ed. 2d 624; 2014 U.S. LEXIS 644 (2014); *Conn v. Zakharov*, 667 F.3d 705, 712-13 (6th Cir. 2012). Plaintiff's Amended Complaint does not specifically identify the jurisdictional basis on which it relies. However, Plaintiff cannot establish either basis of jurisdiction over these Defendants.

{00804147.DOCX /6 }

General jurisdiction exists when the nonresident's "affiliations with the State are so 'continuous and systematic' as to render [the nonresident] ***essentially at home in the forum State***." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011) (emphasis supplied). Activities less extensive than that will not qualify for general in personal jurisdiction. *JRM Investments, Inc. v. National Standard*, LLC, 2012 Tenn. App. LEXIS 356, * 8 (Tenn. Ct. App. May 31, 2012).[5]

The Sixth Circuit recently held a district court did not have general jurisdiction over an out-of-state defendant who owned property and made yearly trips to the forum state. *Conn v. Zakharov*, 667 F.3d 705, 717-20 (6th Cir. Jan. 12, 2012). In reaching that conclusion, the Sixth Circuit, looking to treatises and other courts, noted for a defendant's contacts to be continuous and systematic those contacts must "approximate physical presence within a state's borders," *id.* at 718 (*citing*, *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (overruled on other grounds), and must be "very substantial, indeed . . . quite rigorous" *id.* (quoting Charles Allen Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1067.5, at 520 (3d ed. 2002)).

Here, the Complaint does not contain any allegations regarding any kind of continuous and systematic contacts by either of these Defendants with Tennessee necessary to establish general jurisdiction. In fact, nothing in the Complaint

---

[5] A true and accurate copy of this case is attached hereto as Exhibit C.

14

suggests Danso or Miracle Arena maintains any sort of contacts with Tennessee at all.  In fact, both are domiciled in Canada, and Danso has never entered in the United States, and presently has no ability to do so. Accordingly, there is no basis upon which to exercise general personal jurisdiction over Danso and Miracle Arena, neither of whom is "essentially at home" in Tennessee.

Likewise, there is no basis to exercise specific jurisdiction over Danso and Miracle Arena in this matter. Specific jurisdiction is confined to the adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.  *Goodyear*, 564 U.S. at 919, 131 S.Ct. at 2851.  That is, specific jurisdiction exposes the defendant to suit in the forum state only on claims that arise out of or relate to a defendant's contacts with the forum.  *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997) (*citing*, *Helicopteros Nacionales de Colombia S.A., v. Hall*, 466 U.S. 408, 414-415, 104 S. Ct. 1868, 80 L. Ed. 2d 404 & nn. 8-10 (1984)).  The Sixth Circuit has developed a three-pronged test to determine whether specific jurisdiction exists over a particular defendant:

> (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc*., 401 F.2d 374, 381 (6th Cir. 1968).

Plaintiff fails on all three prongs to establish personal jurisdiction over Danso and Miracle Arena. Again, aside from the purported Guaranty, which is insufficient to support the exercise of personal jurisdiction for the reasons set forth above, the other four bases of jurisdiction are initialing and signing the Proposed January 2016 Miracle Arena Lease Agreement (Amended Complaint, ¶ 15(ii)), sending a check for $15,000 to BALI (Amended Complaint, ¶ 15(iii)), telephone conversation(s) with BALI, with only a single conversation on May 6, 2016, being identified (Amended Complaint, ¶ 15(iv)), and "damages stemming from their conversion of the Aircraft to be felt most particularly in Tennessee, where BALI was and is located." (Amended Complaint, ¶ 15(v)).

As for the initialing and signing the Proposed January 2016 Miracle Arena Lease Agreement, this is not the agreement on which Plaintiff has based its claims. Plaintiff alleges entitlement to rental payment of $18,000.00 per month under the September 4, 2015 Lease Agreement, while the document attached provides for rental payments of $5,000.00 per month.  The Proposed Lease Agreement was never accepted by Plaintiff (Amended Complaint, ¶ 28).  Accordingly, this alleged contact fails the second prong of the Sixth Circuit test for personal jurisdiction ("(2) the cause of action must arise from the defendant's activities there"), as well as the requirement of specific jurisdiction that there be a nexus between the specific contact and the litigation. *Walden v. Fiore*, 134 S. Ct. 1115; 1118, 188 L.

16

Ed. 2d 12; 2014 U.S. LEXIS 1635 (2014); *Daimler AG v. Bauman,* 134 S. Ct. 746, 754, 187 L. Ed. 2d 624; 2014 U.S. LEXIS 644 (2014); *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997) (*citing*, *Helicopteros Nacionales de Colombia S.A., v. Hall*, 466 U.S. 408, 414-415, 104 S. Ct. 1868, 80 L. Ed. 2d 404 & nn. 8-10 (1984)).

Moreover, even if this Proposed Lease Agreement had been accepted, and even if the Proposed Lease Agreement formed the basis of any of the causes of action set forth in Plaintiff's Complaint, a single agreement in and of itself is not sufficient to confer jurisdiction. "'A contract between a plaintiff and an out-of-state defendant is not sufficient in and of itself to establish personal jurisdiction over the defendant in the plaintiff's forum state.'" *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 822 (8th Cir. 2014) (citing *Burger King*, 471 U.S. at 478-79, 105 S. Ct. at 2185)). "Personal jurisdiction, moreover, does not turn on mechanical tests or on conceptualistic theories of the place of contracting or of performance." *Id*. (quoting *Burger King*, 471 U.S. at 478-79, 105 S. Ct. at 2185) (Internal citations omitted). Instead, "courts should consider the terms of the contract and its contemplated future consequences in determining whether personal jurisdiction over a non-resident defendant exists." *Id*. at 822. (citing *Burger King*, 471 U.S. at 478-79, 105 S. Ct. at 2185)(Internal citations omitted). Here, there is no allegation or evidence that the contract was to be performed in Tennessee.

The remaining allegations: a phone call, the sending of a single payment and causing damages to BALI, a Tennessee resident, are neither substantial enough to satisfy the minimum contacts required for the exercise specific jurisdiction nor the type of meaningful contacts by the defendant with the forum to support long arm jurisdiction. As a preliminary matter, Plaintiff does not disclose whether the phone call was initiated by BALI or by Danso (it was initiated by BALI – once again a disingenuous, incomplete and intentionally misleading allegation erroneously purporting to show some "purposeful conduct" on the part of Defendants). (See Amended Danso Declaration, ¶7). Similarly, Danso did not send the $15,000.00, and has no bank account with Wells Fargo or any other bank in the United States. (Amended Danso Declaration, ¶ 8).

Finally, the current controlling Supreme Court authority clearly limits the imposition of long arm jurisdiction merely because the defendant caused damages "to be felt most particularly in Tennessee, where BALI was and is located," as alleged by Plaintiff. The due-process step of the specific-jurisdiction inquiry centers on "the relationship among ***the defendant, the forum, and the litigation***." *Walden v. Fiore*, 134 S. Ct. 1115; 1118, 188 L. Ed. 2d 12; 2014 U.S. LEXIS 1635 (2014) (emphasis added). Because the constitutional limits on personal jurisdiction principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties—the connection to Tennessee "must arise out of

18

contacts that the 'defendant *himself* creates.'" *Walden*, 134 S. Ct. at 1122 (quoting *Burger King*, 471 U.S. at 475) (emphasis added)). So before Tennessee courts can exercise personal jurisdiction, a **_nonresident's_ _suit-related conduct_** must create a **substantial connection _with the state_**. For this reason, this analysis focuses on a defendant's contacts with Tennessee itself, **_not the defendant's contacts with persons who reside there_**. In the absence of these threshold "suit related" contacts, the mere causation of a consequence in the forum state is not sufficient to support long arm jurisdiction, and harm to BALI in and of itself cannot form the basis for the exercise of specific jurisdiction. *Id.*

Moreover, even if the allegations of the Amended Complaint were accurate, these alleged contacts are not sufficiently "substantial," as required by due process, to support the exercise of personal jurisdiction over a foreign corporation and a foreign national who has never set foot in the United States. The "purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as the result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person." *Fastpath,* 760 F.3d at 820 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985)) (Internal citations omitted). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* (quoting *Walden v.*

19

*Fiore*, ___ U.S. ___, 134 S. Ct 1115, 1121, 188 L. Ed. 2d 12 (2014)) (Internal citations omitted). Again, this means that "the relationship must arise out of contacts that the defendant *himself* creates with the forum State." *Id*. at (quoting *Burger King*, 471 U.S. at 475, 105 S. Ct. at 2183-84) (Internal citations omitted). "***Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a*** <u>***substantial connection***</u> ***with the forum state***." *Id.* (quoting *Burger King*, 471 U.S. at 475, 105 S. Ct. at 2183-84) (Internal citations omitted; emphasis added).

The allegations in Plaintiff's Amended Complaint, even if presumed to be accurate, are not sufficiently "substantial," as required by due process, to support the exercise of personal jurisdiction over a foreign corporation and a foreign national who has never set foot in the United States. *See Fastpath, supra* (holding that Defendants' contacts with the forum state, Iowa, which allegedly included ""aggressively pursuing" a business relationship with an Iowa company, sending emails to Iowa, two telephone calls to Iowa, a public webinar viewed by Fastpath in Iowa, obtaining access to information about software products Fastpath had developed in Iowa, and "executing an agreement which imposed continuing obligations on Fastpath in Iowa" with an Iowa choice of law provision were not substantial enough to satisfy the requirements of due process under *Walden*). *See also Snider v. Steidley & Neal, PLLC*, No. 1:12-CV-423, 2013 U.S. Dist. LEXIS

20

76640, * 19-20 (E.D. Tenn. May 31, 2013)(holding that telephone calls, mailings and facsimiles are insufficient to support specific jurisdiction where the causes of action do not arise from these contacts themselves);[6] *see also Porter v. Berall*, 293 F.3d 1073, 1077 (8th Cir. 2002) (finding that actions of attorney-defendants - who provided advice to Missouri resident on Connecticut law from their offices  in Connecticut - did not show that they could have foreseen being haled into court in Missouri based on their actions in Connecticut).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants Danso and Miracle Arena respectfully request that this Court dismiss Mr. Danso and Miracle Arena from this action in Tennessee, a state in which they should never have been haled into Court, without any legal basis and only for Plaintiff's own convenience and potential advantage.

Respectfully submitted, this 8th day of September, 2016.

/s/*Raanon Gal*
Raanon Gal
Tennessee Bar No. 023634
**TAYLOR ENGLISH DUMA LLP**
1600 Parkwood Circle, Suite 400
Atlanta, GA 30339
(770) 434-7214 (tel); (770) 434-7376 (fax)
rgal@taylorenglish.com

Attorney for Defendants Martin Kofi Danso
and Miracle Arena for All Nations

---

[6] A true accurate copy of this case is attached hereto as Exhibit D.

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 8, 2016 a copy of the foregoing *Martin Kofi Danso's And Miracle Arena For All Nations' Motion To Dismiss Amended Compaint For Lack Of Personal Jurisdiction and Memorandum Thereof* was filed and served upon Plaintiff by filing pursuant to the Court's ECF/CM system to the following:

**Brian H. Meldrum, Esq.**
Stites & Harbison, PLLC (Louisville Office)
1800 Capital Holding Center
400 W Market Street
Louisville, KY 40202-3352

**Madison L. Mitchell, Esq.**
Burr & Forman LLP
511 Union Street, Suite 2300
Nashville, TN 37219

**Lauren Paxton Roberts, Esq.**
Stites & Harbison, PLLC (Nashville Office)
401 Commerce Street, Suite 800
Nashville, TN 37219

This 8th day of September, 2016.

/s/*Raanon Gal*
Raanon Gal
Tennessee Bar No. 023634
**TAYLOR ENGLISH DUMA LLP**
1600 Parkwood Circle, Suite 400
Atlanta, GA 30339
(770) 434-7214 (tel)
(770) 434-7376 (fax)
rgal@taylorenglish.com

Attorney for Defendants Martin Kofi Danso
and Miracle Arena for All Nations

22