# EXHIBIT A

Date: Mon, 7 Mar 2016 14:33:36 -0600
Subject: Carn Lease
From: jhenson@baliaircraft.com
To: city123_9@hotmail.com
CC: cmulle@baliaircraft.com

Dear Ron,

Attached are the fully executed 1st Amendment and a draft 2nd Amendment tying The Miracle Arena with Carn Ministries as a Lessee for the Hawker. If the 2nd Amendment is agreeable, please have theme sign and return.

Best regards,

Jackie Henson

Jackie Henson

1

Executive Vice President
615-361-3781 phone
615-367-1226 fax

This e-mail and any attachments have been scanned for viruses, but it is the responsibility of the recipient to conduct their own security measures and no responsibility is accepted by BALI for loss or damage arising from the receipt or use of this e-mail.

# First Amendment to Aircraft Lease Agreement

This First Amendment of the Aircraft Lease Agreement is made as of February 16, 2015 by and between Business Aircraft Leasing, Inc. (the "Lessor") and Brian Carn Ministries (the "Lessee"). Capitalized terms used and not defined herein shall have the meanings ascribed to them in the Aircraft Lease Agreement dated as of September 4, 2015 by and between Lessor and Lessee (the "Agreement").

WHEREAS, The G Inspection referred to in the Lease took longer to complete than expected.

WHEREAS, Lessee owes Lessor Rent for October 2015 through January 2016, plus one-half Rent for February and Engine Reserves for October. (see attached Schedule A)

WHEREAS, as a show of good faith, Lessor agrees to not enforce the collection of Rent for November and December, provided there are no Events of Default.

NOW, THEREFORE, Lessor and Lessee agree as follows:

1. Lessee and Lessor agree to the following schedule to repay past due Rent and October Engine Reserves:

   A. Lessee agrees to pay Lessor $40,000 on or before February 19, 2016;
   B. Lessee agrees to pay Lessor $30,000 on or before February 26, 2016;
   C. Lessee agrees to pay Lessor an additional $15,200 on March 1, 2016 when the March Rent payment is made.

2. Lessee may pick up and operate the Aircraft upon payment of the $40,000 referred to above and payment in full of its invoice with the Aircraft Maintenance Company.

3. Lessee agrees to plan all flights with the FAA using the Aircraft registration Number N180NE and that Lessor can track all flights through Flight Aware (no dot-com flights).

4. Lessee agrees to maintain the Aircraft using Roberts Aviation, St. Augustine, Florida or other maintenance facility mutually agreeable to Lessor and Lessee.

5. Lessee agrees to provide Lessor with the personal guaranty from Brian Carn as specified in the Agreement.

Except as expressly amended hereby, the terms, conditions and provisions of the Aircraft Lease Agreement remain unmodified and in full force and effect.

Signature page immediately follows

IN WITNESS WHEREOF, the Lessor and Lessee have caused this First Amendment to the Aircra
se Agreement to be duly executed and delivered by their authorized representatives.

sor:                                          Lessee:
lness Aircraft Leasing, Inc.                  Brian Carn Ministries

_____                     By: _____

me: _____                 Name: BRIAN CARN

le: _____                 Title: _____

Chuck waived ½ Jan
all Nov, Dec 2015.
Aircraft completed
March 4th 2016.

Second Amendment to Aircraft Lease Agreement

This Second Amendment of the Aircraft Lease Agreement is made as of March 7, 2016 by and between Business Aircraft Leasing, Inc. (the "Lessor") and Brian Carn Ministries (the "Lessee"). Capitalized terms used and not defined herein shall have the meanings ascribed to them in the Aircraft Lease Agreement dated as of September 4, 2015 by and between Lessor and Lessee (the "Agreement").

WHEREAS, Lessee desires to co-lease the Aircraft with The Miracle Arena whose address is 97 Cachet Hill Crest, ON L4H 156 Canada;

WHEREAS, Lessor agrees to such addition, provided there are no Events of Default.

NOW, THEREFORE, Lessor and Lessee agree as follows:

1. The Lessee in the Agreement shall be defined as Brian Carn Ministries and The Miracle Arena (collectively, the "Lessee"), each of whom shall be jointly and severally liable for all Lessee obligations under the Agreement. As additional consideration for the terms hereof, Brian Carn Ministries and The Miracle Arena have each delivered personal guaranties pursuant to the Lease Agreement that guarantees Lessee's obligations under the Agreement.

Except as expressly amended hereby, the terms, conditions and provisions of the Agreement remain unmodified and in full force and effect.

IN WITNESS WHEREOF, the Lessor and Lessee have caused this Second Amendment to the Aircraft Lease Agreement to be duly executed and delivered by their authorized representatives.

Lessor:                                    Lessee:
Business Aircraft Leasing, Inc.            Brian Carn Ministries

By: _____         By: _____

Name: _____         Name: _____

Title: _____         Title: _____


                                           Lessee:
                                           The Miracle Arena

                                           By: _____

                                           Name: _____

                                           Title: _____

# EXHIBIT B

Begin forwarded message:

**From:** Jackie Henson <jhenson@baliaircraft.com>
**Date:** May 31, 2016 at 6:15:00 PM EDT
**To:** Brian Carn <prophetbriancarn@yahoo.com>, Kofi Danso <propheticpapa@yahoo.com>
**Cc:** Chuck Mulle <cmulle@baliaircraft.com>, "bmeldrum@stites.com" <bmeldrum@stites.com>
**Subject: Hawker 800A Lease**

Dear Mr. Danso and Dr. Carn,

Chuck and I have been requesting payment from you for the past few weeks for past due Rent and Engine Reserves. It appears to us that since you have not responded to our default notices or returned Chuck's phone calls, you have no intention of bringing the account current. Dr. Carn signed a lease with us; that lease means something. Both Mr. Danso/Miracle Arena and Dr. Carn each signed personal guaranties. You are leaving us no choice, but to proceed with legal proceedings to collect the money we are due.

We have not included any late fees in our amounts. If you make payment and cure this default quickly, we agree to forego exercising our right to collect late fees on these amounts. If we pursue legal action, late fees of $500 per day each for Rent and Engine Reserves will be included.

The following is a schedule showing amounts due:

|  | Amount Due | Amount Paid | Date Paid |
|---|---|---|---|
| Per 1st Amendment | $40,000 | $40,000 | 2/29/16 |
| Per 1st Amendment | $30,000 | $8,000 | 4/29/16 |
| Per 1st Amendment | — | $12,000 | 5/3/16 |
| Per 1st Amendment | $15,000 | $15,000 | 3/22/16 |
| March Rent | $18,000 | $0 | --- |
| April Rent | $18,000 | $0 | --- |
| May Rent | $18,000 | $0 | --- |
| Total | $139,000 | $75,000 | |

Balance
Due ($139,000 - $75,000)
 $64,000
Engine Reserves (45 x $624)
 $38,800
Total Due
 $92,800

2

# EXHIBIT C

142H44

**Time of Request:** Thursday, September 01, 2016  14:56:46 EST
**Client ID/Project Name:**
**Number of Lines:** 184
**Job Number:**      2825:575191482

Research Information

**Service:**   LEXSEE(R) Feature
**Print Request:** Current Document: 1
**Source:** Get by LEXSEE(R)
**Search Terms:** 2012 Tenn. App. LEXIS 356

**Send to:**  Banich, Catherine
            TAYLOR ENGLISH DUMA LLP
            1600 PARKWOOD CIR SE STE 400
            ATLANTA, GA 30339-2119



### JRM INVESTMENTS, INC. v. NATIONAL STANDARD, LLC

### No. W2011-01143-COA-R3-CV

### COURT OF APPEALS OF TENNESSEE, AT JACKSON

### *2012 Tenn. App. LEXIS 356*

### March 21, 2012, Session
### May 31, 2012, Filed

**PRIOR HISTORY:** [*1]

*Tenn. R. App. P. 3* Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded. Direct Appeal from the Circuit Court for Shelby County. No. CT-006118-10. Gina C. Higgins, Judge.

**DISPOSITION:** Judgment of the Circuit Court Affirmed and Remanded.

**COUNSEL:** David G. Mills, Cordova, Tennessee, for the appellant, JRM Investments, Inc.

Jere Robert Lee, Nashville, Tennessee, for the appellee, National Standard, LLC.

**JUDGES:** DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

**OPINION BY:** DAVID R. FARMER

**OPINION**

The circuit court granted the Defendant's motion to dismiss for lack of personal jurisdiction pursuant to *Rule 12.02(2) of the Tennessee Rules of Civil Procedure*. We affirm.

**OPINION**

### I. Background and Procedural History

JRM Investments, Inc. ("JRM") is a Mississippi corporation with an office located in Shelby County, Tennessee. National Standard, LLC ("National Standard") is a Delaware corporation with manufacturing facilities located in Niles, Michigan and Stillwater, Okla-

homa. National Standard's principal place of business is located in Niles, Michigan. Further, National Standard maintains a registered agent for service of process in Tennessee.

Transnet, [*2] Inc. ("Transnet"), a federally licensed property broker, is an Ohio corporation. In 2009, National Standard contracted with Transnet to arrange for the transportation of two shipments of its goods from its manufacturing facilities in Niles, Michigan to Roseburg, Oregon and to Vernon, California. Thereafter, Transnet contracted with two different motor carriers to transport the two agreed upon shipments. Upon successful delivery of the shipments, Transnet paid each of the motor carriers. Unknown to Transnet, however, the two motor carriers contracted with DAL Transport, Inc. ("DAL"), an Oregon corporation, and ES Express Lines, Inc. ("ES"), an Illinois corporation, to transport the two shipments. Neither DAL nor ES received payment for transporting the two shipments of National Standard's goods. Subsequently, both DAL and ES assigned the unpaid accounts to JRM.

On July 27, 2010, JRM filed a civil warrant in the general sessions court of Shelby County against National Standard to collect on the unpaid accounts. JRM attached a document entitled "Sworn Statement of Account" to the civil warrant, in which it alleged that National Standard owed JRM, as the assignee of the accounts of DAL [*3] and ES, a total of $7,700 in unpaid freight charges. National Standard was served through CT Corporation System, its registered agent for service of process in Tennessee. In response, on October 13, 2010, National Standard filed a sworn denial of indebtedness.[1] Thereafter, on November 24, 2010, National Standard filed a motion to dismiss for lack of personal jurisdiction. On November 30, 2010, after conducting a hearing on the motion, the general sessions court granted National

Standard's motion and dismissed the case. JRM appealed the case to the circuit court of Shelby County.

1   *Tennessee Code Annotated section 24-5-107* provides, in part:

> An account on which action is brought, coming from another state or another county of this state, or from the county where suit is brought, with the affidavit of the plaintiff or its agent to its correctness, and the certificate of a state commissioner annexed thereto, or the certificate of a notary public with such notary public's official seal annexed thereto, or the certificate of a judge of the court of general sessions, with the certificate of the county clerk that such judge is an acting judge within the county, is conclusive against the party [*4] sought to be charged, *unless that party on oath denies the account . . . .*

*Tenn. Code Ann. § 24-5-107(a)* (2000) (emphasis added).

On January 24, 2011, National Standard filed a motion to dismiss in circuit court, supplemented by a memorandum in support of the motion on March 18, 2011, arguing that the case should be dismissed based on the doctrine of *forum non conveniens*, for lack of personal jurisdiction, lack of subject matter jurisdiction, and because JRM failed to comply with the Tennessee Collection Services Act. Also, National Standard filed multiple affidavits and exhibits to support its motion to dismiss. JRM filed a response to the motion, but did not include any supporting affidavits or other proof. On March 25, 2011, the circuit court conducted a hearing on the motion. Thereafter, on April 11, 2011, the circuit court granted National Standard's motion and entered an order dismissing the case. JRM timely filed a notice of appeal with this Court.

## II. Issues Presented

JRM presents the following issues, as restated, for our review:

> (1) Whether the circuit court erred in dismissing the case for lack of personal jurisdiction,

> (2) Whether the circuit court erred in dismissing the case [*5] based on the doctrine of *forum non conveniens*,

> (3) Whether the circuit court erred in dismissing the case for violation of the Tennessee Collection Services Act, and

> (4) Whether the circuit court erred in dismissing the case for lack of subject matter jurisdiction?

## III. Discussion

On appeal, the dispositive issue presented for our review is whether the circuit court erred in dismissing the case for lack of personal jurisdiction. A trial court's decision to grant or deny a motion to dismiss for lack of personal jurisdiction under *Rule 12.02(2) of the Tennessee Rules of Civil Procedure* presents a question of law. Accordingly, we will review the trial court's decision *de novo*, with no presumption of correctness, for the purpose of determining whether the plaintiff established a *prima facie* showing of personal jurisdiction over the defendant. *Woodruff v. Anastasia Int'l, Inc.*, No. E2007-00874-COA-R3CV, 2007 Tenn. App. LEXIS 781, 2007 WL 4439677, at *3 (Tenn. Ct. App. Dec. 19, 2007) perm. app. withdrawn (Apr. 7, 2008); *In re Clark*, No. W2005-01687-COA-R3-JV, 2007 Tenn. App. LEXIS 30, 2007 WL 152537, at *10 (Tenn. Ct. App. Jan. 22, 2007) (*no perm. app. filed*). Ultimately, the burden is on the plaintiff to demonstrate that the trial court may properly [*6] exercise personal jurisdiction over the defendant. *Chenault v. Walker, 36 S.W.3d 45, 56 (Tenn. 2001); Davis Kidd Booksellers, Inc. v. Day-Impex, Ltd., 832 S.W.2d 572, 577 (Tenn. Ct. App. 1992)*. This burden, however, is ordinarily not a heavy one because the plaintiff need only demonstrate personal jurisdiction by a preponderance of the evidence. *Gordon v. Greenview Hosp., Inc., 300 S.W.3d 635, 643 (Tenn. 2009)* (citations omitted).

We begin our discussion by addressing JRM's argument that National Standard waived the defense of lack of personal jurisdiction because it failed to raise it before filing the sworn denial of indebtedness in the general sessions court. We disagree. An appeal from general sessions court to the circuit court results in a *de novo* trial with no presumption of correctness, and the matter is tried as if there had been no previous proceeding. *Hohenberg Bros. v. Missouri Pacific R.R. Co., 586 S.W.2d 117, 119 (Tenn. Ct. App. 1979)*. Moreover, as previously explained by this Court in *Wachovia Bank Card Services v. Overton*, No. 03A01-9510-CV-00373,

*1996 Tenn. App. LEXIS 83, 1996 WL 64004 (Tenn. Ct. App. Feb. 15, 1996)*:

> Since the appeal from [General] Sessions Court was for a trial *de novo*, and [*7] the Rules of Civil Procedure became applicable to the case upon appeal, the Rules allow the defendant to raise all defenses, including a challenge to personal jurisdiction of the [Circuit] Court in either a pre-trial motion or a responsive pleading.

*1996 Tenn. App. LEXIS 83 [WL] at *2* (citing *Landers v. Jones, 872 S.W.2d 674, 676 (Tenn. 1994)*). Accordingly, we find that JRM's argument on this point is without merit.

Next, JRM argues that the circuit court erred in dismissing the case for lack of personal jurisdiction because National Standard maintained such continuous and systematic contacts with Tennessee that it was subject to general jurisdiction. As recently explained by our supreme court in *Gordon v. Greenview Hospital, Inc., 300 S.W.3d 635 (Tenn. 2009)*:

> [G]eneral jurisdiction may be asserted when the plaintiff's cause of action does not arise out of and is not related to the nonresident defendant's activities in the forum state. The threshold for satisfying the requirements for general jurisdiction is substantially higher than the requirements for establishing specific jurisdiction. An assertion of general jurisdiction must be predicated on substantial forum-related activity on the part of the defendant. [*8] The nonresident defendant's contacts with the forum state must be sufficiently continuous and systematic to justify asserting jurisdiction over the defendant based on activities that did not occur in the forum state.
>
> The general jurisdiction inquiry is very different from the specific jurisdiction inquiry. The United States Court of Appeals for the Fifth Circuit has pointed out that "[u]nlike the specific jurisdiction analysis, which focuses on the cause of action, the defendant and the forum, a general jurisdiction inquiry is dispute blind, the sole focus being on whether there are continuous and systematic contact between the defendant and the fo-

> rum." In order to warrant the exercise of general jurisdiction over a nonresident defendant, "the defendant must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there; activities that are less extensive than that will not qualify for general in personam jurisdiction."

> The proper analysis for determining whether a defendant's contacts are "continuous and systematic" enough to warrant an assertion of general jurisdiction requires ascertaining [*9] whether "the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities."

> Questions involving whether a nonresident's contacts with the forum state are sufficient to warrant the exercise of general jurisdiction are extremely fact dependent. Determining whether it is appropriate to exercise general jurisdiction entails a careful, non-mechanical evaluation of the facts with particular focus on the nonresident defendant's contacts with the forum state.

*Id. at 647-48* (internal citations omitted).

The only proof in the record offered by JRM regarding National Standard's contacts with the forum state is that National Standard maintained a registered agent for service of process in Tennessee, and that the registered agent's office is located in Tennessee. In response, National Standard contends that, although it does maintain a registered agent for service of process in Tennessee, it does not maintain any offices in Tennessee, nor has it engaged in any longstanding business in Tennessee to warrant the exercise of general jurisdiction. Further, National [*10] Standard supported its motion to dismiss with multiple affidavits and other documents to substantiate its position that it does not maintain continuous and systematic contacts with Tennessee.[2] JRM, however, failed to provide any affidavits or other materials to support its position that National Standard was subject to general jurisdiction. "[I]f a defendant supports its motion with affidavits, the plaintiff must establish its prima facie showing of personal jurisdiction over the defendant by filing its own affidavits or other written evidence." *Gordon, 300 S.W.3d at 644* (citing *Chenault v. Walker, 36*

*S.W.3d at 56*; *Mfrs. Consolidation Serv., Inc. v. Rodell, 42 S.W.3d 846, 854-55 (Tenn. Ct. App. 2000)).* JRM's failure to establish its *prima facie* showing with its own affidavits or other materials is fatal to its claim in this matter.[3] Accordingly, we find no error in the circuit court's decision to dismiss this action for lack of personal jurisdiction over National Standard. All other issues in this cause are pretermitted.

> 2   "Unlike *Tenn. R. Civ. P. 12.02(6)* motions for failure to state a claim that are supported or opposed by matters outside the pleadings and *Tenn. R. Civ. P. 12.03* motions [*11] for judgment on the pleadings, *Tenn. R. Civ. P. 12.02(2)* motions are not converted to motions for summary judgment when either or both parties submit matters outside the pleadings either in support of or in opposition to the motion." *Gordon, 300 S.W.3d at 643* (citing *Chenault v. Walker, 36 S.W.3d 45, 55 (Tenn. 2001)).*
>
> 3   Moreover, JRM filed a notice in this matter pursuant to *Tennessee Rule of Appellate Procedure 24(d)*, stating that it would not be filing a transcript or statement of the evidence conveying the events that transpired in the circuit court below. Consequently, "[i]n the absence of a tran-

script or statement of the evidence, a presumption arises that there was sufficient evidence to support the trial court's judgment," *Orlando Residence, Ltd. v. Nashville Lodging Co., 213 S.W.3d 855, 865 (Tenn. Ct. App. 2006)* (quoting *In re Estate of Henderson, 121 S.W.3d 643, 647 n.5 (Tenn. 2003)* (citing *Rodell, 42 S.W.3d at 865)),* and we are "required to presume that the record, had it been properly preserved, would have supported the action of the trial court." *Allen v. Allen, No. W2010-00920-COA-R3-CV, 2011 Tenn. App. LEXIS 9, 2011 WL 198516, at *3 (Tenn. Ct. App. Jan. 12, 2011)* (citing *Reinhardt v. Neal, 241 S.W.3d 472, 477 (Tenn. Ct. App. 2007);* [*12] *Sherrod v. Wix, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992)).*

## IV. Conclusion

For the foregoing reasons, we affirm the judgment of the circuit court. Costs of this appeal are taxed to the Appellant, JRM Investments, Inc., and its surety, for which execution may issue if necessary.

DAVID R. FARMER, JUDGE

142H44

********** Print Completed **********

Time of Request: Thursday, September 01, 2016  14:56:46 EST

Print Number:   2825:575191482
Number of Lines: 184
Number of Pages:

Send To:  Banich, Catherine
          TAYLOR ENGLISH DUMA LLP
          1600 PARKWOOD CIR SE STE 400
          ATLANTA, GA 30339-2119

# EXHIBIT D

142H44

**Time of Request:** Thursday, September 01, 2016  14:56:05 EST
**Client ID/Project Name:**
**Number of Lines:** 524
**Job Number:**      2825:575191410

Research Information

**Service:**   LEXSEE(R) Feature
**Print Request:** Current Document: 1
**Source:** Get by LEXSEE(R)
**Search Terms:** 2013 U.S. Dist. LEXIS 76640

**Send to:**   Banich, Catherine
         TAYLOR ENGLISH DUMA LLP
         1600 PARKWOOD CIR SE STE 400
         ATLANTA, GA 30339-2119



KAREN SNIDER, Plaintiff, v. STEIDLEY & NEAL, PLLC, et al., Defendants.

Case No. 1:12-CV-423

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

*2013 U.S. Dist. LEXIS 76640*

**May 31, 2013, Decided**
**May 31, 2013, Filed**

**PRIOR HISTORY:** *Snider v. Frasier, Frasier & Hickman L.L.P., 2010 U.S. Dist. LEXIS 94674 (M.D. Tenn., Sept. 9, 2010)*

**COUNSEL:** [*1] Karen Snider, Plaintiff, Pro se, Chattanooga, TN.

For Steidley & Neal P.L.L.C, Frasier, Frasier & Hickman L.L.P., Oklahoma Attorney Mutual Insurance Company, Defendants: Joshua A Powers, LEAD ATTORNEY, Baker, Donelson, Bearman, Caldwell & Berkowitz (Chatt), Chattanooga, TN.

For Judge Jefferson D. Sellers, Lynette Quetone, court reporter, Peggy Haddock, court reporter, Defendants: John D Hadden, LEAD ATTORNEY, PRO HAC VICE, Oklahoma Attorney General's Office, Litigation Division, Oklahoma City, OK.

For Dora Dental USA, Ron Price, Defendants: Douglas S Johnston, Jr, LEAD ATTORNEY, Barrett Johnston, LLC, Nashville, TN.

For Pignato & Cooper, P.C., Mr. Mark Houts, Defendants: Tonya K Cammon, LEAD ATTORNEY, Grant, Konvalinka & Harrison, PC, Chattanooga, TN.

For Brian J Kuester, Defendant: John R Tarpley, Mary Elizabeth Haltom, LEAD ATTORNEYS, Lewis, King, Krieg & Waldrop, P.C. (Nashville), Nashville, TN.

For Kay Lindsey, deputy clerk, Defendant: Douglas A Wilson, LEAD ATTORNEY, PRO HAC VICE, Office of District Attorney (OK), Tulsa, OK.

**JUDGES:** CURTIS L. COLLIER, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** CURTIS L. COLLIER

**OPINION**

**MEMORANDUM**

This is not the first case the Court has heard from *pro se* Plaintiff Karen Snider ("Plaintiff"). [*2] In fact, the Court dismissed two similar cases against many of the same defendants in 2010. *See Snider v. Doral Dental, USA, et al.*, No. 1:10-CV-19 (E.D. Tenn. Mar. 2, 2010); *Snider v. Gov't Employees Ins. Co.*, No. 1:10-CV-22 (E.D. Tenn. Mar. 2, 2010). But this court is not the only one. Plaintiff has filed numerous frivolous actions in both this district and the Middle District of Tennessee against these defendants, apparently seeking recompense for unsuccessful past lawsuits. Because the Court finds defendants' motions well-taken, the Court will **GRANT** their motions (Court File Nos. 15, 27, 33, 35, 37, 44, 50) and dismiss this action.

**I. FACTUAL BACKGROUND**

These cases arise from a 2008 "contract law" case against attorney Stephen Grayless, which was presumably something of a malpractice action. This action was presided over by Oklahoma Judge Jefferson D. Sellers ("Judge Sellers"). Plaintiff states that Judge Sellers appointed Steven Hickman ("Hickman") of the law firm Frasier, Frasier, & Hickman ("Frasier Firm"), L.L.P., as guardian *ad litem* for her minor child. Steidley & Neal, P.L.L.C. ("Steidley Firm") represented Grayless. Plaintiff alleges the case was dismissed without prejudice [*3]

on August 4, 2008, with a final order dismissing the case being filed on December 15, 2008. The Oklahoma Supreme Court dismissed her appeal on February 23, 2009.

Following disposition of the 2008 case, Plaintiff filed two suits in the Middle District of Tennessee, Case Nos. 3:10-cv-31, 3:10-CV-32, against many of the same defendants listed here. [1] The cases were both transferred to the Northern District of Oklahoma, where they were given new case numbers, Nos. 4:10-cv-578-CVE-PJC, 4:10-CV-46-JHP-TLW. After Plaintiff failed to serve defendants, Chief Judge Claire Eagan issued an order to show cause why the No. 4:10-cv-578-CVE-PJC case should not be dismissed. Plaintiff did not answer the show cause order, and the case was dismissed. Many of the claims in the second case were deemed frivolous by the presiding judge and were dismissed. All claims were eventually dismissed by September 21, 2010 for Plaintiff's failure to prosecute. During this time period, Plaintiff filed the two suits before this court mentioned above. After both of those suits were dismissed, Plaintiff apparently took a two-year rest in pursuit of her claims. Now she has filed the instant suit the Court must dismiss as [*4] well.

> 1   The Court may take judicial notice of the fact Plaintiff has filed these cases. *See Davis v. City of Clarksville, 492 F. App'x 572, 578 (6th Cir. 2012)* ("Certainly, we could take judicial notice of the existence of these documents as evidence that a complaint was in fact filed or a deposition was in fact taken.").

In this case, Plaintiff alleges a fraud upon the court and other related fraud claims, including a civil rights claim alleging a "conspiracy of silence." She listed Judge Sellers as defendant for his role in the underlying case discussed above. Judge Sellers' deputy clerk, Kay Lindsey, was also named as a defendant, as were court reporters Lynette Quetone and Peggy Haddock. She listed Steidley Firm as well as Wallace Steidley [2] and Michelle Harris ("Harris"), attorneys with Steidley Firm, for their involvement in the case. Frasier Firm and Hickman were named as well. Oklahoma Attorney Mutual Insurance Company, insurer for these law firms and attorneys, was listed separately. Pignato & Cooper, P.C. ("Pignato Firm"), and Gerard Pignato ("Pignato") and Mark Houts ("Houts"), attorneys employed by Pignato Firm, are named as defendants, although their involvement is unclear [*5] from the face of the complaint. Brian Kuester is included in Plaintiff's allegations against these attorney defendants, but his involvement is also unclear from the complaint. Finally, she named Doral Dental, USA ("Doral Dental") and Ron Price ("Price") as defendants for their alleged refusal to cooperate in discovery. [3]

> 2   Plaintiff named Steidley as "William Steidley," which apparently was an error.
> 3   In addition to the above, Plaintiff alleges the above-listed individual defendants acted on behalf of their spouses. The significance of this allegation is unclear to the Court. To the extent these spouses were intended to be listed separately, they are dismissed from the case for the reasons discussed with respect to their spouses.

Defendants have all filed motions to dismiss. The Court will grant all of these motions.

## II. STANDARD OF REVIEW

All defendants but Doral Dental and Price seek dismissal under *Fed. R. Civ. P. 12(b)(2)*. Defendants also seek dismissal under *Rules 12(b)(5)*, *12(b)(6)*, or both. Understandably, given Plaintiff's repeated lawsuits, Defendants Steidley Firm, Harris, Steidley, Frasier Firm, Hickman, and Oklahoma Mutual seek dismissal on the merits, and only seek dismissal [*6] on *Rule 12(b)(2)* grounds in the alternative. However, personal jurisdiction is a threshold issue, and because those defendants have not consented to the Court's personal jurisdiction, the Court must consider that issue first. Doral Dental and Price do not seek dismissal on the grounds of personal jurisdiction, and accordingly have waived any personal jurisdiction argument. *Fed. R. Civ. P. 12(h)*.

Although Doral Dental and Price have filed their motion to dismiss pursuant to *Fed R. Civ. P. 12(b)(6)*, the Court observes Plaintiff is proceeding in forma pauperis in this action (Court File No. 3). A court shall dismiss a case proceeding in forma pauperis at any time if the court determines the action or appeal "is frivolous or malicious" or "fails to state a claim on which relief may be granted." *28 U.S.C. § 1915(e)(2)*; *see In re Prison Litigation Reform Act, 105 F.3d 1131, 1134 (6th Cir. 1997)* (noting *28 U.S.C. § 1915(e)(2)* applies to both indigent prisoners as well as indigent nonprisoners). "The courts have no discretion in permitting a plaintiff to amend a complaint to avoid a sua sponte dismissal. If a complaint falls within the requirements of *§ 1915(e)(2)* when filed, then the district [*7] court must sua sponte dismiss the complaint." *Id. at 1138*. "A complaint is frivolous only if the plaintiff fails to present a claim with 'an arguable basis either in law or in fact.'" *Brand v. Motley, 526 F.3d 921, 923 (6th Cir. 2008)* (citation omitted). The standards for dismissing a complaint for failure to state a claim under *§ 1915(e)(2)* or *Fed. R. Civ. P. 12(b)(6)* are identical. *Id. at 924*.

Pursuant to *Fed. R. Civ. P. 12(b)(6)*, a claim should be dismissed when it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lewis v. ACB Bus.*

*Servs., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998) (internal quotation marks omitted). For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). The same deference does not extend to bare assertions of legal conclusions, however, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986).

The Court next [*8] considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. Although a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Fed. R. Civ. P. 8(a)(2)*), this statement must nevertheless contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *id. at 678*. To avoid dismissal, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Plausibility as explained by the Supreme Court "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.'" *Id. at 679* (quoting *Fed. R. Civ. P. 8(a)(2)*).

It [*9] is well established that courts are required to liberally construe *pro se* complaints to allow for the development of a potentially meritorious case. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 358 (6th Cir. 2012). This liberal construction is not boundless, however, for *pro se* plaintiffs are required to comply with substantive law and the minimum requirements for pleading a civil complaint under *Fed. R. Civ. P. 8(a)*. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004).

## III. DISCUSSION

As noted above, Defendants Doral Dental and Price failed to seek dismissal pursuant to *Rule 12(b)(2)* in their first Rule 12 motion and have therefore waived the argument. However, the other defendants all raised the argument in their first Rule 12 motions and the Court must consider personal jurisdiction as a threshold issue. [4]

*Bird v. Parsons*, 289 F.3d 865, 872 (6th Cir. 2002) ("Although it is tempting to avoid addressing Bird's novel theory of personal jurisdiction by assuming, without deciding, that the Dotster defendants are subject to personal jurisdiction in Ohio, and proceed directly to the substantive claims that Bird asserts, the Supreme Court [*10] has recently foreclosed this possibility.") (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-95, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)); *see also Citizens Bank v. Parnes*, 376 F. App'x 496, 501 (6th Cir. 2010) ("Personal jurisdiction over a defendant is a threshold issue that must be present to support any subsequent order of the district court . . . ."). The Court will consider the personal jurisdiction defendants first, and will consider the merits of Plaintiff's claims against Doral Dental and Price second.

4   The Court acknowledges some of defendant raised other jurisdictional questions such as the *Rooker-Feldman* doctrine. However, it is well-established that the law 'does not dictate a sequencing of jurisdictional issues' and that 'a federal court [may] choose among threshold grounds for denying audience to a case on the merits.'" *Aarti Hospitality, LLC v. City of Grove City*, 350 F. App'x 1, 5-6 (6th Cir. 2009) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584-85, 119 S. Ct. 1563, 143 L. Ed. 2d 760 (1999)). The Court finds it appropriate to rule on the personal jurisdiction question as a threshold, rather than consider Plaintiff's claims piecemeal.

### A. Personal Jurisdiction

In addition to jurisdiction over the dispute itself, [*11] a court must have jurisdiction over the parties to that dispute. Jurisdiction over the parties, known as personal jurisdiction, is not at issue where all parties willingly submit to a court's authority to hear a case. Where, as here, defendants [5] in a case hale from out of state and dispute the court's jurisdiction over them, the court can only exercise personal jurisdiction over those out-of-state defendants if they maintain "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (citations omitted). Thus, courts consider whether the exercise of personal jurisdiction over parties is consistent with the *Due Process Clause* in the United States Constitution. [6]

5   "Practically speaking, plaintiffs always concede personal jurisdiction, so the inquiry is typically restricted to defendants; because defendants who reside in the forum state will always be sub-

ject to the personal jurisdiction of the court, the inquiry is in most cases further restricted to non-resident defendants." *Conn v. Zakharov, 667 F.3d 705, 711 (6th Cir. 2012).*

6   A   [*12] court must also have jurisdiction pursuant to the state's long arm statute. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 550 (6th Cir. 2007)* . "Tennessee's long-arm statute[,*Tenn. Code Ann. § 20-2-214(a)(6),*] has been interpreted to be 'coterminous with the limits on personal jurisdiction imposed' by the *Due Process Clause of the United States Constitution,* and thus, 'the jurisdictional limits of Tennessee law and of federal constitutional law of due process are identical.'" *Intera Corp. v. Henderson, 428 F.3d 605, 616 (6th Cir. 2005)* (quoting *Payne v. Motorists' Mut. Ins. Cos., 4 F.3d 452, 455 (6th Cir. 1993)).* Accordingly, "the court need only determine whether the assertion of personal jurisdiction . . . violates constitutional due process." *Aristech Chem. Int'l v. Acrylic Fabricators, 138 F.3d 624, 627 (6th Cir. 1998)* (internal quotation marks and citation omitted).

Under federal due process analysis, there are two bases of personal jurisdiction: "(1) general personal jurisdiction, where the suit does not arise from defendant's contacts with the forum state; and (2) specific jurisdiction, where the suit does arise from the defendant's contacts with the forum   [*13] state." *Conn v. Zakharov, 667 F.3d 705, 712-13 (6th Cir. 2012).* Plaintiff's *pro se* complaint does not specifically identify the jurisdictional basis on which she relies, but given her repeated allegation defendants availed themselves of the privilege of acting in Tennessee during the underlying litigation, the Court presumes she asserts specific jurisdiction. The Court will, however, consider both possible bases of jurisdiction.

Neither the United States Supreme Court nor the Sixth Circuit Court of Appeals has defined a precise test for courts to follow when determining whether the exercise of general jurisdiction is proper. *Id.* The touchstone for general jurisdiction is whether an out-of-state defendant's contacts with the forum state are "continuous and systematic," *Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16, 414 n.9, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984),* and if so, general jurisdiction is proper even if the underlying action "is unrelated to the defendant's contacts with the state," *Intera Corp. v. Henderson, 428 F.3d 605, 615 (6th Cir. 2005)* (citations omitted).

By contrast, a three-factor test exists for determining whether a court properly exercises specific personal jurisdiction   [*14] over an out-of-state defendant.

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968).* [7] The "purposeful availment" requirement-often referred to as the *sine qua non* of personal jurisdiction-"ensures that a defendant will not be haled in a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or third person." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 551 (6th Cir. 2007)* (citing *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985))* (internal citations and quotation marks omitted). Although the out-of-state defendant's physical presence in the forum state is not required, specific personal jurisdiction is only proper where the defendant himself has   [*15] created a substantial connection with the forum state. *Burger King, 471 U.S. at 476.*

7    After first announcing this test in 1968, the Sixth Circuit has continued to rely on the same formulation. *See Conn, 667 F.3d at 713* (quoting *Bird v. Parsons, 289 F.3d 865, 874 (6th Cir. 2002)).*

On the second prong, a court must determine whether a plaintiff's cause of action arises from defendant's contacts with the forum state. In making this determination, a court assesses "whether the causes of action were 'made possible by' or 'lie in the wake of' defendant's contacts, or whether the causes of action are 'related to' or 'connected with' the defendant's contacts with the forum state." *Air Prods., 503 F.3d at 553* (internal citations omitted). Finally, if the court finds these first two prongs satisfied, it must decide whether the exercise of jurisdiction over the defendant is reasonable. *S. Mach., 401 F.2d at 381.* In considering whether exercise of personal jurisdiction is reasonable under this third prong, courts look to four factors: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing   [*16] the most efficient resolution of the controversy." *Intera Corp., 428 F.3d at 618.*

Whether relying on either the general or the specific theory of personal jurisdiction, the plaintiff bears the burden of establishing "specific facts" demonstrating the exercise of personal jurisdiction is proper, and the plaintiff must establish such facts by a preponderance of the evidence. *Conn, 667 F.3d at 711*. Where, as here, the court considers a motion to dismiss under *Fed. R. Civ. P. 12(b)(2)* without the aid of an evidentiary hearing, the plaintiff need only a make a prima facie case the court has personal jurisdiction. *Id.* Finally, given the procedural posture of the case, the Court must view the pleadings in the light most favorable to Plaintiff, but can also consider defendants' undisputed factual assertions. *Id.*

## 1. General Jurisdiction

The Court first considers whether due process permits the imposition of general jurisdiction under the facts of this case. Although Plaintiff has not advanced arguments in support of general jurisdiction, the Court nonetheless considers whether personal jurisdiction is proper on this basis. The Court concludes it is not.

The exercise of general jurisdiction over [*17] an out-of-state defendant is appropriate where that defendant maintains "continuous and systematic" contacts with the forum state. *Helicopteros, 466 U.S. at 416*. The Sixth Circuit recently held a district court did not have general jurisdiction over an out-of-state defendant who owned property and made yearly trips to the forum state. *Conn, 667 F.3d at 717-20*. In reaching that conclusion, the Sixth Circuit, looking to treatises and other courts, noted for a defendant's contacts to be continuous and systematic those contacts must "approximate physical presence within a state's borders," *id. at 718* (citing *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir. 2000)*, [8] and must be "very substantial, indeed . . . quite rigorous" *id.* (quoting Charles Allen Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1067.5, at 520 (3d ed. 2002)).

> [8]   This case was overruled on other grounds by *Yahoo! Inc. v. La Ligue Contre Le Racisme, 433 F.3d 1199 (9th Cir. 2006)*.

Here, defendants do not maintain the kind of continuous and systematic contacts with Tennessee necessary to establish general jurisdiction. Indeed, nothing in the complaint suggests defendants maintain any sort [*18] of contacts with Tennessee. The complaint alleges each of the individual defendants [9] and entities are residents of Oklahoma, and those allegations are supported by the affidavits submitted with some of the defendants' motions (*see* Court File Nos. 36-2, 38-2). Nor does the complaint contain any allegation defendants have been to Tennessee, own property in Tennessee, or otherwise conduct business in Tennessee on a regular basis. Rather,

the complaint focuses on defendants' involvement in the underlying malpractice litigation in Oklahoma, and alleges each defendant availed him or herself of the privilege of acting in Tennessee during that litigation by communicating with Plaintiff via telephone, mail, or facsimile or otherwise engaging with Plaintiff during the litigation while she happened to be a resident of Tennessee. Apparently most important to Plaintiff, she argues Tennessee is more convenient for her and, as an indigent plaintiff, she should be empowered to pursue this suit in the forum of least expense. However, as noted above, due process requires the Court consider the appropriateness of its jurisdiction over *defendants*, not whether Plaintiff would be inconvenienced by pursuing [*19] this action in Oklahoma. Plaintiff has not established any contacts with Tennessee that would subject any of the defendants to Tennessee's general jurisdiction.

> [9]   Price, who did not move to dismiss based on personal jurisdiction, is alleged to be a resident of Wisconsin.

## 2. Specific Jurisdiction

The Court now turns to specific personal jurisdiction. As noted, Plaintiff's sole showing in favor of personal jurisdiction involves defendants' actions during the malpractice litigation. She argues the Court may exercise personal jurisdiction over Judge Sellers because he appointed a guardian *ad litem* to act on behalf of Plaintiff's child while she was a resident of Tennessee. Similarly, Plaintiff suggests Hickman, who served as the appointed guardian *ad litem*, is also properly sued in Tennessee as a result of his representation. The only other allegation in favor of jurisdiction, [10] briefly discussed above, is as follows.

> All the defendants while in Tulsa County Oklahoma caused actions and or events to occurred [sic] and caused damages to me and my minor child in our person in the state of Tennessee via telephone, mail and facsimile after we were living in the state of Tennessee for over three [*20] (3) years.
>
> The acts and omission of the district court in and for Tulsa County Oklahoma judicial system caused injures [sic] to me and my minor child because the state Judge was in league with the lawyers who allegedly perpetrated a fraud upon the court and was bent upon abrogation of our federally protected rights. Whereby, this federal District Court of Eastern Tennessee is designed to protest one's civil and constitutional rights in an impartial forum

for all litigates [sic] alike. We are poor and indigent *pro se* plaintiffs and cannot afford the monetary cost of mailing documents to the court outside my home state and traveling outside of my home state to attend to matters of the lawsuit. Wherefore, this federal court has the jurisdiction to protect my rights as a poor indigent plaintiff from financial and economic burdensome hardship of pursuing my court case to protect our constitutional rights.

I believe as a matter of our federally protected rights venue is proper in Chattanooga Hamilton County state of Tennessee for the sake of convenience; because I am a single parent and the only parent of said minor child who I file this lawsuit on behalf of, child who is a good student with [*21] good grades, respected by all his teachers and peers, not repeatedly tardy or absent from school, active in school extra-curriculum [sic] activities, and will be enrolling in an intern program during these proceedings and it will greatly inconvenience this minor child to cause the child to be away from school and parent away from the child it would not be in the best interest of the child.

(Court File No. 2, ¶¶ 5(D)-(G)).

10 Plaintiff also oddly includes an allegation in favor of exercising personal jurisdiction over Stephen Grayless, the attorney against whom she alleged malpractice in Oklahoma state court. However, Plaintiff did not list Grayless as a defendant in this action and did not serve him.

Plaintiff fails on the first prong of the three-part test to establish specific personal jurisdiction: that "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state." *S. Mach.*, 401 F.2d at 381. Other than Sellers and Hickman, Plaintiff's only availment argument for any one of the defendants is her allegation that they caused actions, events, or damages to occur to her and her child while she was living in Tennessee [*22] through some form of communication, although she fails to specify exactly how this occurred. Although telephone calls or facsimiles may serve as a basis for personal jurisdiction in certain circumstances, those communications must "form the bases for the action." *Intera Corp.*, 428 F.3d at 616; *Neal v. Janssen*, 270 F.3d 328, 332 (6th

*Cir. 2001)* ("[M]aking phone calls and sending facsimiles into the forum, standing alone, may be sufficient to confer jurisdiction on the foreign defendant where the phone calls and faxes form the bases for the action."). From the remainder of the allegations, it is clear Plaintiff's alleged harm occurred not in Tennessee but in Oklahoma, where the "fraud" and "conspiracy of silence" occurred. These "communications," on which Plaintiff appears to base jurisdiction, are the motions and orders submitted in Oklahoma court served on Plaintiff in Tennessee, where she lived while the action was ongoing. The telephone communication may be related to her claim she was surreptitiously recorded by a court reporter when she appeared by telephone for a hearing. She also alleges Harris was involved in a conspiracy against her with Price, with whom she spoke over the [*23] telephone when he promised, but failed, to mail Plaintiff a deposition.

What is clear from these allegations is that the nature of any contact defendants had regarding these communications and mailings was wholly fortuitous and based purely on the fact Plaintiff happened to live in Tennessee at the time the malpractice action was ongoing. This is simply insufficient to establish personal jurisdiction. *See Rice v. Karsch*, 154 F. App'x 454, 462-63 (6th Cir. 2005) (telephone, mail, and e-mail correspondence occurred solely because a corporation chose to have offices in Tennessee, not because the defendant sought to further his personal business or create contacts); *Calphalon v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000) (phone, mail, and facsimile contact in state occurred solely because the plaintiff chose to be headquartered there not because the defendant sought to further its business or otherwise create contacts); *see also Porter v. Berall*, 293 F.3d 1073, 1077 (8th Cir. 2002) ("The [attorney-]defendants were not licensed in Missouri, they did not maintain offices in Missouri, and they did not solicit business in Missouri. They provided advice on Connecticut law from their offices [*24] in Connecticut. Their actions do not show that they could have foreseen being haled into court in Missouri based on their actions in Connecticut.").

The same must be said for Plaintiff's argument in favor of jurisdiction over Judge Sellers and Hickman. Courts hold that a non-resident *attorney's* voluntary representation of a client, without more, is insufficient to establish personal jurisdiction in that client's home state, even with telephone calls, mailings, and personal visits. *See Sawtelle v. Farrell*, 70 F.3d 1381, 1392 (1st Cir. 1995) ("The mere existence of an attorney-client relationship, unaccompanied by other sufficient contacts with the forum, does not confer personal jurisdiction over the non-resident in the forum state; more is required. In this case, the defendant-attorneys' only con-

nection with New Hampshire was the Sawtelles' residence there.") (internal citations omitted); *Austad Co. v. Pennie & Edmonds, 823 F.2d 223, 226-27 (8th Cir. 1987)* (three-day visit by associate and law clerk as well as numerous phone calls was insufficient to establish personal jurisdiction). If an attorney's voluntary representation of a client is insufficient on its own, then certainly being [*25] appointed a guardian *ad litem* to a nonresident litigant, or making the appointment for that matter, is insufficient to establish personal jurisdiction.

Moreover, it is important to note the activity in Oklahoma court occurred because *Plaintiff* chose to file the action, not because any of the defendants filed suit against her. By taking no action in Tennessee, or directed at Tennessee, defendants have not created a substantial connection with the forum state sufficient to justify the Court's exercise of personal jurisdiction. *Burger King, 471 U.S. at 476*. Haling defendants into district court in the Eastern District of Tennessee "solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party" ignores the requirement of the "purposeful availment" prong. *Air Prods., 503 F.3d at 553*.

On the second prong, Plaintiff must show by a preponderance of the evidence that the cause of action "arises from" defendants' actions in Tennessee. *S. Mach., 401 F.2d at 381*. Although the Sixth Circuit has formulated the test for this prong in different ways, *see Air Prods., 503 F.3d at 553*, courts should consider whether a plaintiff's cause of action arises [*26] from "Defendants' contacts with the forum state as well as actions directed at the forum state." *id.* Here, as discussed above, the record indicates defendants have no significant contacts with Tennessee. Plaintiff therefore fails to establish the second prong.

If a court determines specific jurisdiction is proper under the first two prongs-which the Court has not here-it then must decide whether imposition of personal jurisdiction is reasonable. *S. Mach., 401 F.2d at 381*. Because the balance of factors considered in making this inquiry tilts in favor of Oklahoma, the Court concludes imposition of personal jurisdiction here would not be reasonable. [11] First, the burden on defendants to defend this action in Tennessee is great. The actions underlying Plaintiff's complaint occurred in Oklahoma, and all but one defendant is a resident of Oklahoma. Thus, this factor points in favor of defendants. Second, Tennessee has no strong interest in resolving this dispute. Plaintiff is a resident of Tennessee, and Tennessee does have an interest in safeguarding the rights of their residents. But there is no indication a federal court in Oklahoma would be any less able to secure the rights of Tennessee [*27] citizens than would a federal court in Tennessee. Third, although Plaintiff's interest in obtaining relief is im-

portant, there is again no reason to suppose such relief could not be had in a federal court in Oklahoma. Finally, the most weighty factor is the other state's interest in securing the most efficient resolution of the controversy. Oklahoma has a substantial interest in having the legality of public officials of its own state determined by federal courts in Oklahoma, which will be more familiar with application of Oklahoma state law. [12]

> 11    As noted above, the Court considers four factors in making the reasonableness determination: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." *Intera Corp., 428 F.3d at 618*.
>
> 12    As drafted, the complaint appears to invoke claims only cognizable under state law, such as defamation and fraudulent concealment.

For these reasons, Plaintiff has failed to establish personal jurisdiction over all defendants except Doral Dental and Price, who have effectively consented to the Court's jurisdiction. [*28] All other defendants' motions will be **GRANTED** and the claims against them will be **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.

## B. Failure to State a Claim

Doral Dental and Price did not raise the personal jurisdiction issue and instead seek dismissal on the merits. Plaintiff's allegations against Doral Dental and Price in their entirety are as follows:

> Doral Dental was my minor child's dental care provider. Price was an attorney employed in the legal department of Doral Dental. I sent Price a one page deposition upon written questions (affidavit) to obtain discovery evidence I would need to prove my claim in our lawsuit.
>
> I mailed Price the deposition, I spoke with price over the telephone, he promised to mail the deposition back to me.
>
> I called Price He [sic] let me know he had spoken with Harris.
>
> After our conversation Price did not mail me the deposition back and would not return several telephone calls I made to him to obtain the deposition he fail to disclose information I was entitled to as the parent of minor child.
>
> Price was a witness that refused to cooperate and participate in discovery which

caused him to violation 28 U.S.C. Appendix Rule 31.

Because Price violated [*29] the law of discovery 28 U.S.C. Appendix Rule 31 he violated our Civil Rights of *42 U.S.C. Sections 1981 (a)* and *(c)*, *1985(3)*.

Price entered into an agreed conspiracy with Harris with the understanding they would stop me from collecting substantial and relevant discovery evidence to prove my case and Price they entered a conspiracy of silence which caused Harris and Price to deprive us of our Civil Rights of *42 U.S.C. Sections 1985 (3)* and *1986*.

(Court File No. 2, ¶¶ 169-75). Accordingly, the Court reads Plaintiff's complaint as alleging a separate cause of action pursuant to federal civil rights statutes related to Doral Dental's and Price's failure to respond to her discovery requests. However, "[t]here is no separate cause of action [] for redressing discovery-related conduct." *Marozsan v. United States, 90 F.3d 1284, 1290 (7th Cir. 1996).* If these defendants engaged in improper discovery-related conduct, Plaintiff should have sought sanctions pursuant to *Fed. R. Civ. P. 37*. *Id.*

Moreover, these civil rights claims are barred by the applicable statute of limitations. According to the complaint, the malpractice case was dismissed in August 2008, with a final order dismissing the case [*30] being entered in December 2008, and was finally disposed of by Oklahoma appellate courts in February 2009. Even taking the final date as the date the statute of limitations began to run, it had long since expired by the time Plaintiff filed the instant action on December 19, 2012. For her *§§ 1981* [13] and *1985* claims, if the Tennessee statute of limitations applies, Plaintiff had one year in which to file a civil rights action against defendants. Tenn. Code Ann. § 28-3-104(a)(3). The more generous Oklahoma statute of limitations provides her only two years. *Okla. St. Ann. tit. 12, § 95(3)* (West). *Section 1986* explicitly provides "no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued." Accordingly, regardless of the merits of Plaintiff's claims, her civil rights actions are time-barred. [14]

13 For *§ 1981*, the state statute of limitations applies unless the cause of action arose under an Act of Congress enacted after December 1, 1990, in which case a four-year statute of limitations applies under *28 U.S.C. § 1658*. *Jones v. R. R. Donnelley & Sons Co., 541 U.S. 369, 124 S. Ct. 1836, 158 L. Ed. 2d 645 (2004).* This four-year limitations period typically [*31] applies in *§*

*1981* employment cases arising under the Civil Rights Act of 1991. *See, e.g., Hughes v. Gen. Motors Corp., 212 F. App'x 497, 499 (6th Cir. 2007)* (citing *Jones, 541 U.S. at 382*). Here, Plaintiff is not alleging discrimination in the "making, performance, modification, and termination of contracts, [or] the enjoyment of all benefits, privileges, terms, and conditions of [a] contractual relationship," the language added in the 1991 Act. Indeed, Plaintiff's allegations do not allege the existence or breach of a contract. Accordingly, Plaintiff's *§ 1981* claim is not based on an Act of Congress enacted after December 1, 1990, and Tennessee's one-year statute of limitations applies. *See Mitchell v. Crescent River Port Pilots Ass'n, 265 F. App'x 363, 369-70 (5th Cir. 2008).*

14 Plaintiff quotes *Hazel-Atlas Glass Co v. Hartford-Empire Co., 322 U.S. 238, 244, 64 S. Ct. 997, 88 L. Ed. 1250, 1944 Dec. Comm'r Pat. 675 (1944)* for the proposition no statute of limitations applies to a fraud upon the court claim. However, Plaintiff stresses she does not seek relief under *Fed. R. Civ. P. 60*. Moreover, it does not appear she seeks relief from a judgment through an independent action. Rather, the fraud upon the court claim appears to be a substantive [*32] basis for her federal civil rights claims and state law tort claims. Those substantive claims are still subject to the relevant statute of limitations. Regardless, she does not allege Doral Dental or Price were involved in the fraud upon the court, but only alleges the federal civil rights violations discussed in the quoted paragraphs. Accordingly, to the extent Plaintiff attempts to side-step the statute of limitations by alleging a fraud upon the court, she did not do so with respect to these two defendants.

For the foregoing reasons, Plaintiff fails to state a claim upon which relief can be granted against Defendants Doral Dental and Price. Violations of discovery rules do not establish independent causes of actions. Moreover, her civil rights claims are barred by the statute of limitations. Accordingly, Doral Dental's and Price's motion to dismiss will be **GRANTED**.

### C. Motion to Amend

After all but one of the defendants filed motions to dismiss, Plaintiff filed an addendum to her complaint (Court File No. 47). She seeks to add a single factual allegation against Pignato Firm, Pignato, and Houts. She also seeks to add common law conspiracy to commit fraud and common law fraud claims [*33] against each defendant in her complaint. Finally, she adds a prayer for

relief, which she failed to include in her original complaint.

A plaintiff may amend her complaint once as of right twenty-one days after service of a responsive pleading. *Fed. R. Civ. P. 15(a)*. Defendants Doral Dental and Price served their Rule 12 motion to dismiss on February 20, 2013, more than twenty-one days before Plaintiff's motion to amend was filed on March 21, 2013. As to those defendants, then, Plaintiff must seek leave of the Court to amend her complaint. With respect to the other defendants, Plaintiff filed her motion to amend within twenty-one days of service of their respective Rule 12 motions and she was entitled to amend her complaint as of right.

With respect to the defendants dismissed for lack of personal jurisdiction, Plaintiff's purported additions would not alter the Court's ruling. She has alleged no additional facts further establishing defendants' contacts with Tennessee. Moreover, Plaintiff's new causes of action against Doral Dental and Price fail as well. She has alleged no facts in support of her fraud or conspiracy claims. Save for the legal conclusion Price "entered into an agreed [*34] conspiracy with Harris," no factual allegation suggests any involvement of Price and Doral Dental in the alleged conspiracy, or any understanding or communication between those defendants and Harris beyond the lone allegation that Price informed Plaintiff he and Harris had spoken. Plaintiff also has not alleged any harm as a result of Price's failure to return her deposition or to answer discovery questions she has failed to specify. A fraud action must be alleged with particularity. *Fed. R. Civ. P. 9(b)*. Plaintiff's generalized addition of "common law fraud" fails in that respect.

Because Plaintiff's proposed amendment would be futile, the Court will **DENY** her motion to amend with respect to Doral Dental and Price (Court File No. 47). As to the other defendants, Plaintiff was entitled to file an amended complaint without leave of the Court. Typically an amended complaint renders previously filed Rule 12 motions moot, as the original complaint becomes a legal nullity. However, Plaintiff failed to abide by the clear requirements of Local Rule 15.1, pursuant to which

> [a] party who moves to amend a pleading shall attach a copy of the proposed amended pleading to the motion. Any amendment [*35] to a pleading, whether filed as a matter of course or upon a motion to amend, shall, except by leave of Court, reproduce the entire pleading as amended and may not incorporate any prior pleading by reference. A failure to comply with this rule may be grounds for denial of the motion.

E.D. Tenn. L.R. 15.1. Plaintiff's amended complaint did not reproduce the entire document but was styled as an addendum to her complaint. Accordingly, her "amended complaint" is defective and Plaintiff's addendum to her complaint does not render the original, and operative, complaint a nullity. The Court need not require defendants to renew their motions to dismiss.

**D. Prefiling Restrictions**

Some of the defendants in this case have requested the Court impose a prefiling restriction on Plaintiff. Such restrictions are not uncommon when courts are confronted with plaintiffs who engage in repetitive, vexatious, or frivolous litigation. *Feathers v. Chevron U.S.A., Inc., 141 F.3d 264, 269 (6th Cir. 1998)* (affirming an injunction prohibiting filing future cases without leave of court and upholding the method of "imposing prefiling restrictions in matters with a history of repetitive or vexatious litigation."); *Rowe v. City of Detroit, 55 F. App'x 316 (6th Cir. 2003)* [*36] (affirming prohibition of filing any new action without prior written judicial approval). The Court understands defendants' frustration with Plaintiff's repeated lawsuits, and the Court does have concerns Plaintiff refuses to accept her unfortunate position in this case. The Court, however, recognizes the seriousness of closing the courthouse doors to citizens entitled to access the federal judiciary. Plaintiff has filed repetitive actions against these defendants, although with variations in her substantive claims. The Court will not yet impose a prefiling restriction on Plaintiff, but warns her that another action against these defendants in this district would likely call for such a drastic measure. The Court therefore will **DENY** defendants' request for prefiling restrictions, with the caveat it will not be so generous in a similar, subsequent action.

**IV. CONCLUSION**

For the foregoing reasons, the Court will **GRANT** defendants' respective motions (Court File Nos. 15, 27, 33, 35, 37, 44, 50). The claims against Defendants Doral Dental and Price will be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief could be granted. The claims against the rest of the defendants [*37] will be **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction. There being no other issues in this case, the Court will **DIRECT** the Clerk of Court to **CLOSE** this case.

**An order shall enter.**

**/s/**

**CURTIS L. COLLIER**

**UNITED STATES DISTRICT JUDGE**

********** Print Completed **********

Time of Request: Thursday, September 01, 2016  14:56:05 EST

Print Number:    2825:575191410
Number of Lines: 524
Number of Pages:

Send To:  Banich, Catherine
          TAYLOR ENGLISH DUMA LLP
          1600 PARKWOOD CIR SE STE 400
          ATLANTA, GA 30339-2119