IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| BUSINESS AIRCRAFT LEASING, INC., | ) ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| BRIAN CARN MINISTRIES, INC.; | ) | CIVIL ACTION NO. |
| MIRACLE ARENA FOR ALL      NATIONS; | ) | 3:16-cv-01577 |
| BRIAN CARN; MARTIN KOFI DANSO; | ) | |
| RONALD E. MAYS; CITY JET, INC. | ) | |
| MICHAEL CARASTRO; and | ) | |
| APOLLO FLIGHT TRAINING & | ) | |
| AIRCRAFT MANAGEMENT, LLC | ) | |
| d/b/a APOLLO AVIATION, | ) | |
| | ) | |
| Defendants. | ) | |

## SUPPLEMENTAL MEMORANDUM OF DEFENDANTS DANSO AND MIRACLE ARENA IN SUPPORT OF AMENDED MOTION FOR SANCTIONS UNDER RULE 11 AND IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO THE INHERENT POWERS OF THIS COURT

Martin Kofi Danso ("Mr. Danso") and Miracle Arena For All Nations ("Miracle Arena"), by and through the undersigned counsel of record, hereby file this Supplemental Memorandum in Support of their Amended Motion for Sanctions Under Rule 11, and this Memorandum in Support of Mr. Danso and Miracle Arena's Motion for Sanctions pursuant to the inherent powers of this Court, and show this Court as follows.

## INTRODUCTION

Defendants Mr. Danso and Miracle Arena originally served Plaintiff with a Motion for Sanctions under Rule 11 on August 19, 2016, because Plaintiff falsely alleged in the Original Complaint that they were subject to personal jurisdiction on the grounds that, among other things,[1] Miracle Arena was a party under a lease agreement containing a consent to personal jurisdiction

---

[1] Also addressed at pages 1-7 of Motion for Sanctions Under Rule 11.

1

and Mr. Danso guarantied this lease agreement. Rather than dismiss this action for lack of jurisdiction as requested in the proposed Rule 11 motion, Plaintiff has cavalierly – without any explanation other than to "clarify the paper flow" – totally withdrawn its cornerstone jurisdictional argument that Miracle Arena was a co-lessee and subject to personal jurisdiction based on the consent to jurisdiction in the lease.[2]  Instead, as to Miracle Arena, it now attempts to shift its jurisdictional claim to alleged contacts with the forum state– all of which are insufficient as a matter of law – and many of which are also demonstrably false and were either known to Plaintiff to be false or would be discovered to be false through any reasonable investigation.

Also as to Mr. Danso, individually, as shown in their Motion for Rule 11 Sanctions, when Plaintiff filed this action, it also knew, or should have known, that Danso never signed a guaranty of the subject Lease.

Defendants also attached to their original Rule 11 motion a series of e-mails from Plaintiff, sent prior to filing the Complaint, acknowledging that there was never a lease agreement with Danso or Miracle Arena.[3]  Instead of agreeing to withdraw the Tennessee federal court Complaint against these defendants, Plaintiff's counsel ominously threatened in his initial e-mail response to the Rule 11 motion, "extensive jurisdictional discovery" "absent consensual resolution."  (See e-

---

[2]  Indeed, Plaintiff has brazenly done a complete 180 degree turn, and contrary to the express allegations in the original Complaint that "Miracle Arena was a co-lessee" (Complaint, ¶¶ 6, 21), now contends in paragraphs 6, 28, 30 and 85 of the Amended Complaint that Miracle Arena was **not** a co-lessee. Plaintiff then cavalierly blames this change in the factual allegations in its own Complaint on Defendant's assertion in the Rule 11 motion that "Miracle Arena was not a co-lessee."  The facts did not change – and whatever position Defendants take – it should not change Plaintiff's allegations – if they were either true or well-founded in the first place. This is just an attempt to shift the explanation for the amendments to the Complaint to the need to cure their own intentional misrepresentations to the fact that Defendant's called them on these obvious fabrications. All of this demonstrates a pattern of dishonesty that permeates their dealings with the Defendants in this case.

[3]  See Exhibits A and B below.

mail from Brian Meldrum to Donald R. Andersen, dated August 19, 2016, attached hereto as Exhibit D). When Defense counsel refused to be cowed by this threat, Plaintiff merely amended its Complaint to withdraw the allegations under the lease agreement, substituting these allegations for an equally specious "conversion" claim, but retaining the frivolous claims against Danso under the guaranty, even though Danso had averred in his declaration, filed in support of his Motion to Dismiss, that he never agreed to guaranty the lease agreement and never signed the guaranty. [4]

Plaintiff's amended Complaint continues to allege, falsely, that Danso and Miracle Arena submitted to this Court's jurisdiction when they signed the guaranty (either directly or through Defendant Ronald Mays), executed a proposed lease agreement (which was never accepted), made payments to Plaintiff (only one of which is identified), and "converted" the subject aircraft in some undisclosed manner and location. These activities are insufficient as a matter of law under the U.S. Supreme Court's landmark decisions of *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011)) *Walden v. Fiore*, __ U.S. __, 134 S. Ct. 1115; 1118, 188 L. Ed. 2d 12; 2014 U.S. LEXIS 1635 (2014); and *Daimler AG v. Bauman*, __ U.S. __134 S. Ct. 746, 754, 187 L. Ed. 2d 624; 2014 U.S. LEXIS 644 (2014).

Accordingly, Defendants Danso and Miracle Arena are filing this Supplemental Memorandum in Support of their Amended Motion for Sanctions under Rule 11 for the pattern of litigation abuses reflected in the original Complaint, and now perpetuated in the Amended Complaint, and respectfully request that this Court impose sanctions on Plaintiff under Fed R. Civ. P. 11 if Plaintiff does not dismiss these Defendants from this action within twenty-one (21) days

---

[4] Danso also averred that he is a citizen of Canada, that he had never even entered the U.S. and has no visa waiver to enter the U.S. Accordingly, not only was Mr. Danso outside of the State of Tennessee, but any alleged use of the aircraft involved in this case by Mr. Danso, was *a fortiori* for travel between points outside the United States, and therefore certainly outside of the State of Tennessee.

3

of service of the instant Amended Motion for Sanctions. Additionally, Defendants seek sanctions under the inherent powers of the Court to the extent that, rather than complying with Rule11's mandate to withdraw frivolous claims and avoid frivolous litigation, Plaintiff has multiplied and compounded these proceedings by not complying with Rule 11 by withdrawing the offending pleading, but by substituting another, equally defective and baseless pleading, for the same improper purpose.

On September 1, 2016, pursuant to Fed. R. Civ. P. 11(c)(2), Danso and Miracle Arena sent, by hand delivery, email and Federal Express, a copy of the Amended Motion and this Supplemental Memorandum to Plaintiff's counsel demanding that Plaintiff dismiss its claims against these Defendants in this action within twenty-one (21) days thereof, or the Defendants would file this Amended Motion. Plaintiff has failed and refused to dismiss its claims against these parties in this action.

## FACTS

Martin Kofi Danso resides in Ontario, Canada and is a citizen of Canada. *See* Declaration of Martin Kofi Danso, ¶ 1 ("Danso Declaration"), previously filed in connection with his Motion to Dismiss. Mr. Danso has never been in the United States of America. *Id.* at ¶ 2. He has applied for a visa waiver for entry into the United States of America, but that visa waiver has not been granted as of this time. *Id.* Accordingly, Mr. Danso has no lawful right to enter into the United States. Mr. Danso does not own any property located in the State of Tennessee. *Id.* at ¶ 3. Mr. Danso has never availed himself of the privileges and benefits of the laws of the State of Tennessee. *Id.*

Miracle Arena is a Canadian non-profit corporation, which Plaintiff alleges is "controlled by Mr. Danso." (Complaint, ¶ 4).

Plaintiff's original Complaint falsely alleged that "Miracle Arena . . . contracted with [Plaintiff] to lease an aircraft [later specifically described as the September 4, 2015 "Aircraft Lease Agreement (***"the Lease Agreement"***)] . . . attached [to the Complaint] as Exhibit A"] (Complaint, ¶¶ 6 and 16). Plaintiff also falsely alleged that Mr. Danso "executed a Personal Lease Guaranty (the <u>Danso Guaranty</u>) whereby he requested [Plaintiff] to enter into ***the Lease Agreement***[5] with Miracle Arena and unconditionally guaranteed to [Plaintiff] that Miracle Arena would perform its obligations under ***the Lease Agreement and First Amendment [dated February 16, 2016]***." (Complaint ¶ 21). Additionally, Plaintiff falsely claimed that "[a] true and correct copy of the Danso Guaranty, including the initialed and signed pages of ***the Lease Agreement***, was attached [to the Complaint] as **<u>Exhibit C</u>**" (Complaint ¶ 21 and Exhibit C thereto) (bold and italicized emphasis added).

Contrary to the allegations made in the original Complaint, ***the Lease Agreement*** did not identify Miracle Arena as a party and did not bear what purports to be Mr. Danso's signature. (*See* A to the Complaint). Additionally, in his declaration offered in support of his Motion to Dismiss, Mr. Danso affirmatively testified that he never signed ***the Lease Agreement*** and was not himself a party to that lease. (*See* Danso Declaration ¶ 4). Likewise, Mr. Danso has affirmatively attested that the printed handwritten name on the signature line of the "Danso

---

[5] The absurdity of this allegation that Mr. Danso requested Plaintiff to enter into the September 24, 2015 Lease Agreement is further highlighted by the fact that the Lease Agreement had already been entered approximately six month before, and this allegation falsely claims, in essence, that the purported March 3, 2016 guaranty induced Plaintiff to enter into an agreement it already had entered approximately six (6) months before. Plaintiff had already leased the Aircraft under the Lease Agreement that is the subject of this action, and the Danso Guaranty, even if genuine, had not been requested for that Lease as alleged. Aside from the absurdity of the allegation, it also highlights the total lack of any consideration for this purported guaranty of the pre-existing Lease by Mr. Danso – who was not a party to the Lease or even related to the Lessee under the September 24, 2015 Lease, Brian Carn Ministries, Inc.

5

Guaranty" (Exhibit C to the Complaint) was not his handwriting and was not his signature. *See* Danso Declaration ¶ 5.  For the sake of clarity and in response to the allegations of the Amended Complaint, Danso has filed herewith his Amended Declaration, averring that he never authorized Defendant Mays or anyone else to sign his name to the Guaranty.  (*See* Amended Declaration of Martin Kofi Danso "Amended Danso Declaration, ¶ 6").

Prior to its amendment, Paragraph 21 of the Complaint falsely alleged that Mr. Danso "also initialed and signed ***the Lease Agreement***," and further that "the Danso Guaranty, include[es] the[se] initialed and signed pages [page one and the signature page] of ***the Lease Agreement***."  Plaintiff, knowing that Danso never signed this Lease Agreement, attached these documents as Exhibit C to the Complaint and represented to this Court that they were ***from the Lease Agreement***.  *Id.*  However, ***these pages <u>were not from the Lease Agreement at all</u>.***

Instead, these excerpted pages were from a ***<u>proposed</u>*** Lease signed by Mr. Danso on behalf of Miracle Arena in January 2016 [sic] (the "Proposed January 2016 Miracle Arena Lease"), as the date on first excerpted page included in Exhibit C to the Complaint clearly shows.[6]  The Lease Agreement, on the other hand, is clearly between Plaintiff and Brian Carn Ministries, not Danso or Miracle Arena. Yet, Plaintiff misrepresented to this Court that these pages were from the Lease Agreement.

Furthermore, as the excerpted signature page from the Proposed January 2016 Miracle Arena Lease shows, this proposed lease was never signed on behalf of Plaintiff.  Even the slightest inspection of the first excerpted page of the Proposed January 2016 Miracle Arena Lease shows that Plaintiff's allegations in Paragraph 21 are clearly false, because the wording

---

[6] This proposed lease agreement contains a typographical error listing the year as 2015 rather than 2016.  However, the more significant point, as set forth below, is that these are two entirely different lease agreements with materially different terms.

6

and the terms on page one of the proposed lease are materially different from the Lease Agreement.  There is a significantly larger deposit in the Proposed January 2016 Miracle Arena Lease ($150,000 v. $95,000), a much lower monthly rental rate ($5,000 per month v. $18,000 per month) and a right to purchase the aircraft at the end of the term of the proposed lease – a term that is not present at all in the Lease Agreement.

Even more troubling than all of the foregoing, however, is the fact that on March 7, 2016, just **four days after Plaintiff alleges that Danso had** signed his Guaranty of the Lease Agreement **and provided Plaintiff with the copy of the initialed and signature pages of _the Lease Agreement_ attached to the Guaranty**, Jackie Henson, on behalf of Plaintiff, sent an e-mail to Defendant Ron Mays, asking him to have Miracle Arena sign a Second Amendment to **_the Lease_ Agreement** "**_tying The Miracle Arena_** with Carn Ministries **_as a Lessee for the Hawker_**."  (_See_ e-mail from Jackie Henson to "city123 [Ron Mays]" dated March 7, 2016 (emphasis added), attached hereto as Exhibit A and _compare_ with Paragraph 21 of Plaintiff's Complaint).  The subsequent proposed Second Amendment to **_the Lease Agreement_** "tying the Miracle Arena . . . as a Lessee for the Hawker" was never signed and for that reason Plaintiff obviously did not attach it or reference it in the Complaint.

Moreover, in pre-suit e-mail correspondence sent less than one month before the Complaint was filed, Plaintiff again admitted, by implication, that only Carn and Brian Carn Ministries had executed the Lease Agreement.  (_See_ e-mail correspondence from Jackie Henson to Brian Carn dated May 31, 2016, and attached hereto as Exhibit B, noting only that "Dr. Carn signed a lease with us," and referring only to a [purported] guaranty from "Mr. Danso, Miracle Arena" Lease).  Clearly, Plaintiff **_knew_** before it filed the Complaint that Miracle Arena and Danso had never signed any documents making them parties to the subject Lease Agreement,

7

and, in fact, had not signed the documents that Plaintiff had prepared to add Miracle Arena as a Lessee. Yet, Plaintiff attempted to deceive this Court by presenting Exhibit C and making the patently false allegations in paragraph 21 of its Complaint that Danso signed and initialed the Lease Agreement and signed the Guaranty.

Plaintiff's original Complaint also alleged jurisdiction principally upon the Lease Agreement and Danso Guaranty, neither of which were executed by Mr. Danso, under the notion that Danso consented to the exercise of jurisdiction in Tennessee. Plaintiff's Complaint also alleges personal jurisdiction on other grounds, stating that "Defendants [including Mr. Danso and Miracle Arena] purposefully availed themselves of doing business with BALI, a Tennessee corporation, knowingly and intentionally causing harm to BALI through the breach of Contract and other wrongs below." (Complaint, ¶ 14). In reality, no such purposeful availment of the forum state ever occurred, and there was no basis for the exercise of personal jurisdiction over Mr. Danso or Miracle Arena.

Accordingly, Defendants Danso and Miracle Arena served their original Motion for Sanctions under Rule 11 on August 19, 2016, via mail and e-mail. In the e-mail transmittal correspondence, Don Andersen summarized the reasons why the allegations in the Complaint were frivolous, offered Mr. Meldrum additional time to consider the Rule 11 Motion, and offered to come to Louisville, Kentucky, where Mr. Meldrum is located to discuss "a resolution before any of us incur any further expense." (*See* e-mail correspondence between Donald R. Andersen and Brian Meldrum, attached hereto as Exhibit D).

In his August 19th response to both the Rule 11 Motion and the e-mail, Mr. Meldrum posed a series of informal interrogatories, querying Mr. Andersen regarding the relationship between the Defendants, whether Taylor English represented Defendant Carn and Brian Carn

8

Ministries, the relationship between the Defendants, whether Mr. Danso or Miracle had a contractual right to possess the aircraft, who handwrote the words "Martin Kofi Danso" and "Miracle Arena" on Exhibit C, and whether either Danso or Miracle Arena authorized Mays to witness Exhibit C. Some of these might be reasonable questions in the context of discovery on the merits, but the issue presented by the Rule 11 motion was clearly one of personal jurisdiction – not the merits of any claims or possible counterclaims between the parties – and the facts are that Exhibit C is a highly questionable document ___on its face___ and Plaintiff implicitly admitted in its own e-mail correspondence of May 21st that ___there was no Lease Agreement with Miracle Arena or Danso___ (See Exhibit B), despite its efforts to ***"[tie] The Miracle Arena*** with Carn Ministries ***as a Lessee for the Hawker"*** (See Exhibit A)(Emphasis added). These e-mails were attached to the original Rule 11 Motion for Mr. Meldrum's review and consideration. Thus, Plaintiff's counsel's response was merely an attempt to divert attention from the serious Rule 11 issues presented by the false jurisdictional allegations and to avoid responding appropriately, and as required by Rule 11, by dismissing these defendants from this action in this forum.

The most troubling thing about Mr. Meldrum's e-mail of August 19th, however, was his threat that "absent a consensual resolution, I anticipate extensive jurisdictional discovery given your motions." (See Exhibit D). Mr. Meldrum wrote these words in response to Mr. Andersen's request to meet with Mr. Meldrum in order to honor Mr. Meldrum's earlier suggestion "to keep costs low for everyone involved and try to explore a resolution at the right time." *Id.* In other words, in the face of a Rule 11 Motion, which attached e-mail correspondence demonstrating that Plaintiff knew that the allegations of the original Complaint were false, Mr. Meldrum threatened Mr. Andersen with "extensive jurisdictional discovery" if Defendants Danso and Miracle Arena did not agree to a settlement.

Mr. Andersen simply responded by saying that he would "look forward to hearing from you after you have discussed the potential Rule 11 motion with your client" and offering to "to provide [Mr. Meldrum] with authority limiting [jurisdictional] discovery in cases in which there is no proper basis for jurisdiction alleged in the complaint." (See Exhibit D).

On Monday, August 22nd, Mr. Meldrum responded, "We continue to evaluate whether BALI's claims against Mr. Danso and Miracle Arena are not well grounded in fact, not warranted by existing law or a good faith argument for the existing law, or interposed for an improper purpose, as your clients contend in your Rule 11 papers. Presently, we decline to withdraw the claims against Mr. Danso and Miracle Arena." *Id.* Instead, Mr. Meldrum attached an Amended Complaint, which he insists was filed to "clarify the document flow, including addressing your position that your clients were not lessees." *Id.*

In reality, the Amended Complaint does not "clarify the document flow" or otherwise address the gross misrepresentation made in the original Complaint that Danso and Miracle Arena were parties to the Lease Agreement. Instead, Mr. Meldrum has simply substituted a conversion claim for the breach of contract claim, claiming erroneously that "if it is correct [that Danso and Miracle Arena were not lessees]" then "[a]n important consequence of that position . . . is that neither Mr. Danso nor Miracle Arena had a right to control the aircraft or hold themselves out as owners. We have thus added a new conversion count to deal with that." [7] *Id.*

---

[7] Of course, the mere fact that Danso and Miracle Arena might have had control of the Aircraft (even if true) or otherwise travelled in the Aircraft, posed for pictures with it, or claimed to own or possess it, without being parties to the Lease Agreement, does not *per se* amount to a conversion of the Aircraft. Yet, this is precisely the ill-considered theory behind the inclusion of Count Four, according to Brian Meldrum. (See Exhibit D). Regardless of the lack of merit of this Count, it is clearly just another attempt to try to save personal jurisdiction when it does not exist, because even if factually true, wholly or in part, this Count addressing activities solely outside the State of Tennessee does not support Plaintiff's continued attempt to assert specific jurisdiction in Tennessee arising merely from possession, control, use, or even claims

10

Adding to the confusion surrounding the intent and effect of the amendments to the Complaint, Paragraph 14 of the Amended Complaint, which is directed to "all Defendants," still continues to assert that the choice of venue provision in the Lease Agreement justifies the exercise of jurisdiction over "all Defendants," which would include Danso and Miracle Arena. (Amended Complaint, ¶ 14).

The most troubling aspect of the Amended Complaint, however, is the fact that Plaintiff continues to pursue a claim against Danso and Miracle under the Guaranty, when clearly the Guaranty was not signed by Danso on his own behalf or on behalf of Miracle Arena. (See Exhibit C to the Complaint)(Dkt. 22-1, pp. 19-20). Moreover, the Guaranty on its face is incomplete. The last sentence on Page 1 is an incomplete sentence ending with the word "or," and page 2 begins with a new sentence, beginning with the word "If." *Id.* Clearly, at least one page is missing from the Guaranty. The Guaranty is undated and refers in the body of the document to the Lease Agreement of September 4, 2015, yet attaches the Proposed January 2016 Miracle Arena Lease Agreement of January 2016, which was never accepted. The Guaranty identifies the "Lessee" as Miracle Arena, not Brian Carn Ministries, even though there was no lease agreement between Miracle Arena and Plaintiff. Finally, the Guaranty does not properly name or identify the Guarantor. Rather, the Guarantor is inconsistently and incomprehensibly identified as "Kofi Danso/Miracle Arena, ***Individually***." *Id*. (Emphasis added). This document is patently suspicious and does not satisfy even the most basic requirements of contract formation for a guaranty under Tennessee law, as it fails to identify the guarantor and incorrectly identifies

_____

of ownership, of the Aircraft outside of Tennessee. *See Walden v. Fiore*, __ U.S. __, 134 S. Ct. 1115; 1118, 188 L. Ed. 2d 12; 2014 U.S. LEXIS 1635 (2014)(Georgia [Canadian] defendant holding and contesting ownership of property of Nevada [Tennessee] resident in Georgia [outside of Tennessee], does not in itself constitute "purposeful contact" in forum state - Nevada [Tennessee] - so as to support long arm jurisdiction in Nevada [Tennessee]).

{00802025.DOCX /3 }

the alleged obligor - identifying Miracle Arena and not Brian Carn Ministries, LLC – as the lessee whose purported obligations under the Lease were the subject of the guaranty.

Other jurisdictional allegations include initialing and signing the Proposed January 2016 Miracle Arena Lease Agreement (Complaint, ¶ 15(ii)), sending a check for $15,000 to BALI (Complaint, ¶ 15(iii)), telephone conversations with BALI (Complaint, ¶ 15(iv)), and "damages stemming from their conversion of the Aircraft to be felt most particularly in Tennessee, where BALI was and is located." (Complaint, ¶ 15(v)). As set forth below, the alleged contacts set forth in these jurisdictional allegations, particularly as applied to a foreign corporation and a foreign individual who has never entered the United States and has no lawful right to do so, are inadequate to establish personal jurisdiction under the approach set forth in the triumvirate of new Supreme Court cases: *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011)) *Walden v. Fiore*, __ U.S. __, 134 S. Ct. 1115; 1118, 188 L. Ed. 2d 12; 2014 U.S. LEXIS 1635 (2014); and *Daimler AG v. Bauman*, __ U.S. __134 S. Ct. 746, 754, 187 L. Ed. 2d 624; 2014 U.S. LEXIS 644 (2014). For these reasons, Defendants Danso and Miracle Arena hereby amend their request that Plaintiff dismiss this action as to these Defendants with prejudice within twenty-one (21) days of service of the instant Motion.

## ARGUMENT AND CITATION OF AUTHORITY

## I.    Standard Under Fed. R. Civ. P. 11

Fed. R. Civ. P. 11 reads in relevant part as follows:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

12

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

(c) Sanctions.

(1) In General. If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

Fed. R. Civ. P. 11(b) and (c).

The Sixth Circuit has explained that under Rule 11:

[S]anctions may be imposed if "a reasonable inquiry discloses the pleading, motion, or paper is (1) not well grounded in fact, (2) not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, or (3) interposed for any improper purpose such as harassment or delay."

*Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 335 (6th Cir. 1988).

The purpose of sanctions is to deter the abuse of the legal process. *Id*. Rule 11 was amended in 1983 to facilitate the imposition of sanctions against attorneys who disregard their professional responsibilities to the court. *Id*. As amended, the rule "stresses the need for some pre-filing inquiry into both the facts and the law to satisfy the affirmative duty imposed." *Id.* See also *Merritt v. International Ass'n. of Machinists*, 613 F.3d 609, 626 (6th Cir. 2010). Moreover, the "reasonable inquiry under Rule 11 is not a one-time obligation"—"plaintiff is impressed with a continuing responsibility to review and reevaluate his pleadings." *Id*. It is well established that

13

"Rule 11 sanctions are appropriate when an attorney refuses to dismiss a claim after becoming aware that it lacks merits." *Baker v. Chevron U.S.A., Inc.,* 533 F. App'x. 509, 2013 WL 3968783 (6th Cir. 2013).[8] Rule 11 motions are measured against an "objective standard of reasonableness under the circumstances." *Merritt,* 613 F.3d at 626.

Moreover, when an attorney becomes aware that a claim lacks merit, his obligation under Rule 11 is to dismiss the claim, not continue to attempt to extract concessions or a settlement prior to dismissal, as Plaintiff did via its counsel's threat to engage in "extensive jurisdiction discovery" if a settlement is not reached. (See Exhibit D hereto). The case of *Costa & Grissom Machinery, Inc. v. Qingdao Giantway Machinery Co., Ltd.,* 1:08-CV-2948-CAP (N.D. Ga. December 2, 2009)(Dkt. 155), is illustrative of this point.[9] In that case, the court awarded sanctions under its inherent authority against the plaintiff and its counsel for failing to dismiss frivolous claims immediately once they became aware that the claims lacked merit. The Court was specifically critical of the very tactics employed by Mr. Meldrum in his email, noting, "Incredibly, even though [the plaintiff] realized from information available on December 16 that its reverse palming off claims were not viable, it did not simply amend its complaint to remove those claims - instead preferring to send litigious letters to [the defendant] offering to remove those claims in exchange for some action on [the defendant's] behalf." *Id.* (Dkt. 155, p. 38).

As shown herein, even the most superficial review of Exhibits A and C to the Complaint will demonstrate that the allegations of the Complaint directed to Mr. Danso and Miracle Arena are 1) not well grounded in fact, and 2) are not warranted by either existing law or a good faith argument for the extension, modification or reversal of existing law. Plaintiff has set forth a

---

[8] A true and accurate copy of this unpublished opinion is attached hereto as Exhibit C.
[9] A true and accurate copy of this Order is attached hereto as Exhibit E.

{00802025.DOCX /3 }

Complaint that has no basis in law or fact.  The failure to dismiss the Complaint against Mr.

Danso and Miracle Arena within twenty-one (21) days of service of this Amended Motion

warrants the imposition of sanctions.

**II.** **The Lease Agreement and the Purported Danso Guaranty Provide No Basis For the Assertion of Any Claims or the Exercise of Personal Jurisdiction Over Mr. Danso or Miracle Arena, Because Neither Is A Party to the Lease Agreement or To Any Guaranty of the Lease Agreement.**

The Complaint alleges that Mr. Danso was a guarantor under the Lease Agreement.

However, under Tennessee law,[10] the Statute of Frauds requires that a guaranty must be signed

to be enforceable.  Tenn. Code Ann. Section 29-2-101(a)(2).  Mr. Danso did not sign the

Guaranty and did not print his name on the Guaranty.  Danso Declaration, ¶ 5.  Under these

circumstances, there is no guaranty of the Lease Agreement by Mr. Danso.

Further, even if the Guaranty attached to the Complaint as Exhibit C had been signed by

Mr. Danso and otherwise genuine[11] and enforceable (which Mr. Danso denies), the Guaranty

---

[10] The Guaranty specifies Tennessee law; however, in this diversity case, the underlying validity of the document would ordinarily be governed by the law of the forum state, Tennessee. However, federal law contains a choice of law statute for aircraft leases and dictates that the applicable law is the State where the lease (not the aircraft) would be delivered, and "[i]f the conveyance, lease, or instrument specifies the place at which delivery is intended, it is presumed that the conveyance, lease, or instrument was delivered at the specified place."  49 US Code § 44108(c)(1).  Since the Lease and Guaranty were never signed, their terms cannot dictate the result and the federal statute dictates that the validity of the Lease should be determined by the law of the state where the instrument was to be delivered. In this case, while noting the foregoing legal issue and that the evidence as to which party was to deliver the final document and where is not yet clear, it will be assumed for purposes of this motion only that the document was to be e-mailed to Plaintiff in Tennessee.

[11] As set forth in note 1, *supra*, there are significant clear, obvious and patent inconsistencies between the first page of the guaranty attached as Exhibit C to the Complaint, which refers to the Lease Agreement – to which neither Mr. Danso nor Miracle Arena for All Nations is a party – and the front page and signature page of the partially executed Proposed January 2016 Miracle Arena Lease attached to the Guaranty as included in Exhibit C to the Complaint. These obvious inconsistencies on the face of Exhibit C, while clearly demonstrating that the Guaranty included in Exhibit C is not a Guaranty of the Lease Agreement as it purports on its

only specifies the application of Tennessee law, but, unlike the Lease Agreement, does not contain any consent to personal jurisdiction in the State of Tennessee. (*See* Complaint, Exhibit C.). Rather, the Guaranty contains only a choice of law provision, which in and of itself is insufficient to confer jurisdiction. *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 822 (8th Cir. 2014) ("choice-of-law provisions specifying that the forum state's laws govern are insufficient on their own to confer personal jurisdiction").

## III. The Alleged "Contacts" Between Miracle Arena and Danso And The State of Tennessee Are Insufficient As A Matter of Law To Support The Exercise of Personal Jurisdiction.

The other alleged contacts are also insufficient as a matter of law to establish personal jurisdiction, because they were too attenuated and/or not related to the causes of action alleged, and as such they do not satisfy the due process requirement of minimum contacts. In diversity cases, federal courts apply the law of the forum state, subject to constitutional limitations, to determine whether personal jurisdiction exists. *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994). Thus, a court must look not only to the forum state's long-arm statute, but also to the due process requirements of the Constitution. Tennessee's long-arm statute, Tenn. Code Ann. § 20-2-214, expands the jurisdiction of Tennessee courts to the full limit permitted by due process. *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 645 (Tenn. 2009). When a state's long-arm statute reaches as far as the limits of the Due Process Clause, the two inquiries merge, and the Court need only determine whether the exercise of personal jurisdiction violates constitutional due process.

---

first page to be, also raise questions as to the integrity, completeness and genuineness of the Complaint's Exhibit C as a whole.

16

Depending on the type of minimum contacts in a case, personal jurisdiction can take one of two forms: (1) general personal jurisdiction, where the suit does not arise from defendant's contacts with the forum state; and (2) specific jurisdiction, where the suit does arise from the defendant's contacts with the forum state." *Daimler AG v. Bauman,* __ U.S. __ 134 S. Ct. 746, 754, 187 L. Ed. 2d 624; 2014 U.S. LEXIS 644 (2014); *Conn v. Zakharov*, 667 F.3d 705, 712-13 (6th Cir. 2012). Plaintiff's Complaint does not specifically identify the jurisdictional basis on which it relies. However, Plaintiff cannot establish either basis of jurisdiction over these Defendants.

General jurisdiction exists when the nonresident's "affiliations with the State are so 'continuous and systematic' as to render [the nonresident] ***essentially at home in the forum State***." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011) (emphasis supplied). The threshold for satisfying the requirements for general jurisdiction is substantially higher than the requirements for establishing specific jurisdiction. An assertion of general jurisdiction must be predicated on substantial forum-related activity on the part of the defendant. In order to warrant the exercise of general jurisdiction over Danso and Miracle Arena, their affiliations with the State must be "so 'continuous and systematic' as to render [Danso and Miracle Arena] ***essentially at home in the forum State***." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011) (emphasis supplied). Activities less extensive than that will not qualify for general in personal jurisdiction. *JRM Investments, Inc. v. National Standard*, LLC, 2012 Tenn. App. LEXIS 356, * 8 (Tenn. Ct. App. May 31, 2012).[12]

---

[12] A true and accurate copy of this case is attached hereto as Exhibit F.

{00802025.DOCX /3 }

The Sixth Circuit recently held a district court did not have general jurisdiction over an out-of-state defendant who owned property and made yearly trips to the forum state. *Conn v. Zakharov*, 667 F.3d 705, 717-20 (6th Cir. Jan. 12, 2012). In reaching that conclusion, the Sixth Circuit, looking to treatises and other courts, noted for a defendant's contacts to be continuous and systematic those contacts must "approximate physical presence within a state's borders," *id.* at 718 (*citing, Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (overruled on other grounds), and must be "very substantial, indeed . . . quite rigorous" *id.* (quoting Charles Allen Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1067.5, at 520 (3d ed. 2002)).

Here, the Complaint does not contain any allegations regarding any kind of continuous and systematic contacts by either of these Defendants with Tennessee necessary to establish general jurisdiction. In fact, nothing in the Complaint suggests Danso or Miracle Arena maintains any sort of contacts with Tennessee at all. In fact, both are domiciled in Canada, and Danso has never entered in the United States, and presently has no ability to do so. Accordingly, there is no basis upon which to exercise general personal jurisdiction over Danso and Miracle Arena.

Likewise, there is no basis to exercise specific jurisdiction over Danso and Miracle Arena in this matter. Specific jurisdiction is confined to the adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction. *Goodyear*, 131 S.Ct. at 2851. That is, specific jurisdiction exposes the defendant to suit in the forum state only on claims that arise out of or relate to a defendant's contacts with the forum. *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997) (*citing, Helicopteros Nacionales de Colombia S.A., v. Hall*, 466 U.S. 408, 414-415, 104 S. Ct. 1868, 80 L. Ed. 2d 404 & nn. 8-10 (1984)). The

Sixth Circuit has developed a three-pronged test to determine whether specific jurisdiction exists over a particular defendant:

> (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc*., 401 F.2d 374, 381 (6th Cir. 1968).

Plaintiff fails on all three prongs to establish personal jurisdiction over Danso and Miracle Arena. Again, aside from the purported Guaranty, which is insufficient to support the exercise of personal jurisdiction for the reasons set forth above, the other four bases of jurisdiction are initialing and signing the Proposed January 2016 Miracle Arena Lease Agreement (Complaint, ¶ 15(ii)), sending a check for $15,000 to BALI (Complaint, ¶ 15(iii)), telephone conversation(s) with BALI, with only a single conversation on May 6, 2016, being identified (Complaint, ¶ 15(iv)), and "damages stemming from their conversion of the Aircraft to be felt most particularly in Tennessee, where BALI was and is located." (Complaint, ¶ 15(v)).

As for the initialing and signing the Proposed January 2016 Miracle Arena Lease Agreement, this is not the agreement on which Plaintiff has based its claims. Plaintiff alleges entitlement to rental payment of $18,000.00 per month under the September 4, 2015 Lease Agreement, while the document attached provides for rental payments of $5,000.00 per month. The Proposed Lease Agreement was never accepted by Plaintiff (Amended Complaint, ¶ 28). Accordingly, this alleged contact fails the second prong of the Sixth Circuit test for personal jurisdiction ("(2) the cause of action must arise from the defendant's activities there"), as well as the requirement of specific jurisdiction that there be a nexus between the specific contact and the litigation. *Daimler AG v. Bauman,* __ U.S. __134 S. Ct. 746, 754, 187 L. Ed. 2d 624; 2014 U.S.

19

LEXIS 644 (2014); *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997) (*citing*, *Helicopteros Nacionales de Colombia S.A., v. Hall*, 466 U.S. 408, 414-415, 104 S. Ct. 1868, 80 L. Ed. 2d 404 & nn. 8-10 (1984)).

Moreover, even if this Proposed Lease Agreement had been accepted, and even if the Proposed Lease Agreement formed the basis of any of the causes of action set forth in Plaintiff's Complaint, a single agreement in and of itself is not sufficient to confer jurisdiction. "'A contract between a plaintiff and an out-of-state defendant is not sufficient in and of itself to establish personal jurisdiction over the defendant in the plaintiff's forum state.'" *Fastpath, Inc. v. Arbela Techs. Corp*., 760 F.3d 816, 822 (8th Cir. 2014) (citing *Burger King*, 471 U.S. at 478-79, 105 S. Ct. at 2185). "Personal jurisdiction, moreover, does not turn on mechanical tests or on conceptualistic theories of the place of contracting or of performance." *Id*. (quoting *Burger King*, 471 U.S. at 478-79, 105 S. Ct. at 2185) (Internal citations omitted). Instead, "courts should consider the terms of the contract and its contemplated future consequences in determining whether personal jurisdiction over a non-resident defendant exists." *Id*. at 822. (citing *Burger King*, 471 U.S. at 478-79, 105 S. Ct. at 2185)(Internal citations omitted).

The remaining allegations: a phone call, the sending of a single payment and causing damages to BALI, a Tennessee resident, are neither substantial enough to satisfy the minimum contacts required for the exercise specific jurisdiction nor the type of meaningful contacts by the defendant with the forum to support long arm jurisdiction. As a preliminary matter, Plaintiff does not disclose whether the phone call was initiated by BALI or by Danso (it was a "collection call" initiated by BALI – once again a disingenuous, incomplete and intentionally misleading allegation erroneously purporting to show some "purposeful conduct" on the part of Defendants). (See Amended Danso Declaration, ¶7). Similarly, Danso did not send the $15,000.00, and has no

bank account with Wells Fargo or any other bank in the United States. (Amended Danso Declaration, ¶ 8). However, even if the allegations of the Amended Complaint were accurate, these alleged contacts are not sufficiently "substantial," as required by due process, to support the exercise of personal jurisdiction over a foreign corporation and a foreign national who has never set foot in the United States.

Finally, the current controlling Supreme Court authority clearly limits the imposition of long arm jurisdiction merely because the defendant caused damages "to be felt most particularly in Tennessee, where BALI was and is located," as alleged by Plaintiff. The due-process step of the specific-jurisdiction inquiry centers on "the relationship among ***the defendant, the forum, and the litigation***." *Walden v. Fiore*, __ U.S. __, 134 S. Ct. 1115; 1118, 188 L. Ed. 2d 12; 2014 U.S. LEXIS 1635 (2014) (emphasis added). Because the constitutional limits on personal jurisdiction principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties—the connection to Tennessee "must arise out of contacts that the 'defendant *himself* creates.'" *Walden*, 134 S. Ct. at 1122 (quoting *Burger King*, 471 U.S. at 475) (emphasis added)). So before Tennessee courts can exercise personal jurisdiction, a ***nonresident's* suit-related conduct** must create a ***substantial connection* with the state**. For this reason, this analysis focuses on a defendant's contacts with Tennessee itself, ***not the defendant's contacts with persons who reside there***. In the absence of these threshold "suit related" contacts, the mere causation of a consequence in the forum state is not sufficient to support long arm jurisdiction, and harm to BALI in and of itself cannot form the basis for the exercise of specific jurisdiction. *Id.*

The "purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as the result of random, fortuitous, or attenuated contacts or of the unilateral

{00802025.DOCX /3 }

activity of another party or a third person." *Fastpath,* 760 F.3d at 820 (quoting *Burger King v. Rudzewicz,* 471 U.S. 462, 475, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985)) (Internal citations omitted). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* (quoting *Walden v. Fiore,* U.S. , 134 S. Ct 1115, 1121, 188 L. Ed. 2d 12 (2014)) (Internal citations omitted). Again, this means that "the relationship must arise out of contacts that the defendant *himself* creates with the forum State." *Id.* at (quoting *Burger King,* 471 U.S. at 475, 105 S. Ct. at 2183-84) (Internal citations omitted). "***Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a <u>substantial connection</u> with the forum state***." *Id.* (quoting *Burger King,* 471 U.S. at 475, 105 S. Ct. at 2183-84) (Internal citations omitted; emphasis added).

The allegations in Plaintiff's Complaint and indeed the evidence of record are wholly insufficient to show that Danso's and Miracle Arena's acts had a substantial enough connection with the Tennessee. *See Fastpath, supra* (holding that Defendants' contacts with the forum state, Iowa, which allegedly included ""'aggressively pursuing" a business relationship with an Iowa company, sending emails to Iowa, two telephone calls to Iowa, a public webinar viewed by Fastpath in Iowa, obtaining access to information about software products Fastpath had developed in Iowa, and "executing an agreement which imposed continuing obligations on Fastpath in Iowa" with an Iowa choice of law provision were not substantial enough to satisfy the requirements of due process under *Walden*). *See also Snider v. Steidley & Neal, PLLC*, No. 1:12-CV-423, 2013 U.S. Dist. LEXIS 76640, * 19-20 (E.D. Tenn. May 31, 2013)(holding that telephone calls, mailings and facsimiles are insufficient to support specific jurisdiction where the

causes of action do not arise from these contacts themselves);[13] *see also Porter v. Berall*, 293 F.3d 1073, 1077 (8th Cir. 2002) (finding that actions of attorney-defendants - who provided advice to Missouri resident on Connecticut law from their offices in Connecticut - did not show that they could have foreseen being haled into court in Missouri based on their actions in Connecticut).

In short, Plaintiff has no legal or factual basis for a claim against Mr. Danso or Miracle Arena under either the Lease Agreement or under the purported Danso Guaranty or any other basis for the exercise of personal jurisdiction against these Defendants in Tennessee. Mr. Danso first pointed out the deficiencies and misrepresentations in the Complaint by way of his Motion to Dismiss, which was filed on August 8, 2016, and again in his Rule 11 motion served on August 19th. Mr. Danso and Miracle Arena are again addressing these deficiencies and misrepresentations of law and fact by way of the instant Amended Motion and Memorandum. Accordingly, if Plaintiff fails to dismiss this action as to these Defendants within twenty-one (21) days, then Rule 11 sanctions are warranted under the first two prongs of this Circuit's standard for the imposition of sanctions.

## **CONCLUSION**

For the foregoing reasons, Defendants Danso and Miracle Arena respectfully request that this Court impose sanctions against Plaintiff under Fed. R. Civ. P. 11 and the inherent powers of this Court. Moreover, even if Mr. Danso and Miracle Arena are dismissed at this point, this Court's inherent power to control its own docket and the integrity of its processes provides a further basis for the imposition of sanctions for this pattern of abusive and bad faith conduct in filing and then failing to properly dismiss Mr. Danso and Miracle Arena from this Tennessee

---

[13] A true accurate copy of this case is attached hereto as Exhibit G.

{00802025.DOCX /3 }

action in a state in which they should never have been haled into Court, without any legal basis and only for Plaintiff's own convenience and potential advantage.

Respectfully submitted, this 1st day of September, 2016.

/s/*Raanon Gal*
Raanon Gal
Tennessee Bar No. 023634
**TAYLOR ENGLISH DUMA LLP**
1600 Parkwood Circle, Suite 400
Atlanta, GA 30339
(770) 434-7214 (tel)
(770) 434-7376 (fax)
rgal@taylorenglish.com

*Attorney for Defendant Martin Kofi Danso*

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2016, a copy of the foregoing was served upon

Plaintiff by hand delivery and e-mail to Lauren Roberts at the following address and by email

and by placing a copy in the U.S. Mail, postage prepaid, addressed to Brian Meldrum as follows:

> **Brian H. Meldrum, Esq.**
> Stites & Harbison, PLLC (Louisville Office)
> 1800 Capital Holding Center
> 400 W. Market Street
> Louisville, KY 40202-3352
>
> **Lauren Paxton Roberts, Esq.**
> Stites & Harbison, PLLC (Nashville Office)
> 401 Commerce Street, Suite 800
> Nashville, TN 37219

This 1st day of September, 2016.

> /s/*Raanon Gal*
> Raanon Gal
> Tennessee Bar No. 023634
> **TAYLOR ENGLISH DUMA LLP**
> 1600 Parkwood Circle, Suite 400
> Atlanta, GA 30339
> (770) 434-7214 (tel)
> (770) 434-7376 (fax)
> rgal@taylorenglish.com
>
> *Attorney for Defendant Martin Kofi Danso*

25